FILED IN CLERK'S OFFICE
U S D C
SEP 25 2008
JAMES N. ...
By ...

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KAMAL MUSTAFA AL-SULTAN,<br><br>Plaintiff/Relator,<br><br>v.<br><br>THE PUBLIC WAREHOUSING COMPANY--K.S.C. d/b/a PWC LOGISTICS; THE SULTAN CENTER FOOD PRODUCTS COMPANY, K.S.C., TAREK ABDUL AZIZ SULTAN AL-ESSA; CHARLES TOBIAS SWITZER; and EMAD ALSALEH,<br><br>Defendants. | Civil Case No. 1 05-CV 2968<br>JURY TRIAL DEMANDED<br><br>**FILED IN CAMERA AND UNDER SEAL** |

## FIRST AMENDED COMPLAINT
## FOR VIOLATION OF THE FALSE CLAIMS ACT

COMES NOW Plaintiff, United States of America *ex rel.* Kamal Mustafa Al-Sultan, by and through counsel, and, prior to the filing of any responsive pleading herein, amends its Complaint, previously filed under seal herein, by adding the following allegations thereto:

- 1 -

## COUNT VII

### Continuation of False Claims Involving the Second PV Contract
**(By Plaintiff/Relator Against All Defendants)**
**31 U.S.C. §§ 3729(a)(1) and 3729(a)(2)**

95. Plaintiff hereby realleges Paragraphs 1-94 of his relator Complaint for Violation of the False Claims Act, and related claims, as filed on November 18, 2005 (the "Original Complaint").

96. The fraudulent schemes described in Paragraphs 1-94 of the Original Complaint continue unabated through the date hereof with respect to the PV Contracts.[1]

97. Defendants have engaged in a massive cover-up, have engaged in significant additional fraudulent conduct, and continue to submit false claims to the United States Government to hide their illegal and unlawful conduct, as described herein.

## COUNT VIII

### Illegal Rebate Kickback Scheme By Defendants
**(By Plaintiff/Relator Against All Defendants)**
**31 U.S.C. §§ 3729(a)(1) and 3729(a)(2)**

98. Paragraphs 1-97 of the First Amended Complaint are hereby expressly incorporated herein by reference as if the same were fully set forth herein.

---

[1] Terms of art used in this pleading have the same meaning as those used in the Original Complaint

99. In furtherance of their scheme to defraud the government under the First and Second PV Contracts, Defendants have conspired with various vendors in the United States, Kuwait, and abroad to, as a condition to purchasing food items from those vendors, explicitly negotiate and obtain discounts, rebates, and kickbacks from those vendors on a regular and consistent basis of between 3% and 8.5% of each invoice amount. These suppliers are believed to include, but are not limited to, Rastelli's Fine Foods, Birite Food Service Distributors, Imperial Sales, Texas Best Trading, Zartic, Inc., Ocean Direct Seafood, Richmond Wholesale, American Grocers, and American Bounty, which supply Berry Amendment[2] compliant foods, pursuant to the First and Second PV Contracts, including, but not limited to, frozen and processed beef, poultry, pork, and seafood products, cereal, dry goods, and other food items.

100. Plaintiff/Relator believes that purchases from the vendors, who are providing discounts, rebates and kickbacks, account for in excess of 45% of total purchases by PWC pursuant to the First and Second PV Contracts. Plaintiff/Relator believes that, on average across all such vendors, the

---

[2] The Berry Amendment (10 U S C § 25339a) requires the U S Department of Defense ('DOD") to buy certain products- judged essential to U S military readiness with 100% content and U S labor These products include clothing and other textile items, specialty steel and food The Berry Amendment is intended to ensure military readiness through an active defense-industrial base and is supposed to provide a reliable domestic source for obtaining vital goods during war time

"discount/rebate/kickback" from such vendors has been approximately 5% of goods sold to PWC

101. The terms of the "discounts" and "rebates" and "kickbacks" negotiated by Defendants with such vendors are concealed in many cases as an "early" payment by PWC within 90 days of invoice or delivery, which is neither industry standard nor commercially reasonable and is clearly an attempt of the Defendants to mask their massive and pervasive fraudulent scheme

102. Under the terms of the PV Contracts, all discounts, rebates, and other monies or items of value given to the Prime Vendors, in connection with goods being provided to the United State Government, must be passed along to and for the benefit of the United States Government. Further, monthly rebate reports are required to be filed with the United States Government set forth each such rebates, discounts, kickbacks, or other such monies or benefits by the Prime Vendor.

103. Paragraph 15 of Solicitation No. SP0300-02-R-4003, which forms a part of the First PV Contract, requires not only that rebates and discounts be passed along to the United States Government, but also that the Prime Vendor be as aggressive as possible in pursuing all rebates or discounts, including all mail-in coupons and discounts. It also requires that "unit prices offered by the offeror shall be less than or equal to unit prices charged by the offeror to its most favored

commercial or government customer for similar quantities, under comparable terms and conditions." (See Exhibit "P")

104. Paragraph 24 of Solicitation No. SPM300-04-R-0323, which forms a part of the Second PV Contract, provides:

> Rebates and discounts are to be returned to DSCP when they are directly attributable to sales resulting from orders exclusively submitted by DSCP or its customers. Additionally, any rebates and discounts offered to any commercial customer or other government organization shall be given to DSCP or its customers in the form of an up-front price reduction. The discount/allowance shall be reflected via a reduced STORES price, resulting in a lower invoice price to the customer.

105. Defendants know that these discounts, rebates, and kickbacks must be given and disclosed to the United States Government. Defendants have intentionally refused to inform and have hidden from the United States Government these discounts, rebates, and kickbacks and are not passing along their discounts, rebates, and kickbacks, nor are they reflecting "such reductions via a reduced STORES price" in violation of the PV Contracts. The Defendant's failure

to disclose and to give to the United States Government these discounts, rebates, and kickbacks is part of their scheme to defraud. Further, the failure to give or disclose these rebates, discounts, and kickbacks violates the fiduciary duty, the duty of good faith, and the duty of honest services the Defendants owe the United States Government.

106. On information and belief, with the knowledge and direct involvement of the Defendants, many suppliers of both market ready items and Berry Amendment items to PWC are charging PWC in excess of the prices charged to their most favored commercial or government customers in order to compensate PWC and other Defendants in the form of these illegal discounts and rebates and kickbacks.

107 In fact, there are many other available, qualified, and approved vendors who offer the same or better quality products at lower prices. However, Defendants are intentionally bypassing many of these vendors and intentionally doing business with vendors who agree to rebate, discount, or kickback money to them. In fact, Defendants continuously maintain and analyze updated information on these rebates, discounts and kickbacks from each of the vendors and categorize such payments in their calculations of "profit margin."

108. Plaintiff/Relator has recently learned that Defendant TSC has forced and continues to force some of its local market ready item vendors to pay rebates, discounts, or kickbacks to TSC and others, as a condition of doing business with TSC, and that such rebates, discounts, or kickbacks are similarly not passed back along to the United States Government.

109. Plaintiff/Relator has been informed by the DOD that approximately $3,250,000,000 has been paid to PWC pursuant to the First and Second PV Contracts as of July 25, 2006. Of that amount, it is estimated that 60% of such payments represent charges for Berry Amendment goods or $1,950 billion. Based on an average 5% for the discount/rebate/kickback scheme described herein, the United States Government has incurred at least another $100 million in damages as a result of Defendants' fraudulent conduct.

## COUNT IX

**False Claims Act - Presentation of False Claims -
Pricing Scam for Local Market Ready Products in Jordan
(By Plaintiff/Relator Against All Defendants)
§§ 3729(a)(1) and 3729(a)(2)**

110. Paragraphs 1-109 of the First Amended Complaint are hereby expressly incorporated herein by reference as if the same were fully set forth herein.

111    Since early 2005, Defendants have conspired with one of its suppliers in Jordan, Jordan Global Food Distribution ("Jordan Global"), to unilaterally and artificially inflate the prices charged by Jordan Global on a periodic basis to PWC for various market ready items such as fresh fruits, vegetables, and dairy products to be delivered in Jordan pursuant to the First and Second PV Contracts.  In addition, Defendants have reviewed and continue to regularly review Jordan Global's prices and have directed Jordan Global to make additional increases of up to 5% at a time so as not to attract unwarranted attention of DSCP as a result of dramatic price increases

112    PWC, the Prime Vendor, is required, pursuant to the PV Contracts, and its legal obligation to the United States Government, to negotiate the best prices for the United States Government, but instead, in violation of the PV Contracts, its fiduciary duty, and its duties of good faith and honest services, has directed and caused, and continues to cause, these vendor prices from Jordan Global to be inflated from the actual prices charged and/or quoted by Jordan Global to other customers in order to (i) increase PWC's profits and (ii) hide the fact that TSC's prices for market ready items sold to PWC for distribution to the U.S. troops in Kuwait and Iraq are significantly higher due to TSC's fraudulent

scheme to mark-up of prices from local approved source vendors to PWC as described in this First Amended Complaint.

113. On information and belief, the Defendants are sharing illegal profits from these PWC-directed inflated prices with Jordan Global, and Jordan Global is kicking back the mark-up or a portion thereof to the Defendants.

114. Defendants do not pass along any of the monies they receive as a result of these mark-ups to the United States Government. These mark-ups and the Defendants failure to pass on the benefits they receive from these mark-ups violate the First and Second PV Contracts and applicable law, and these Defendants are in violation of their fiduciary duty and their duty of good faith and honest services that they owe the United States Government.

115. The prices charged by Jordan Global are substantially higher than prices quoted for the same goods by other approved suppliers, who supply market ready items to Defendants in Kuwait and Iraq, and Defendants are aware of these facts. For example, at one point in time in early 2003, Jordan Global's suggested pricing of $1.30/lb for apples was nearly 80% higher than for the same apples from another approved source in Jordan. Defendants know that they can obtain the same goods at prices substantially lower than the prices that they are paying their chosen vendors.

116. Defendants clearly directed the prices charged by Jordan Global and purchased goods from Jordan Global in order to continue to find ways to illegally line their own pockets and cover-up their massive mark-up scheme on market ready items by the Defendants, as otherwise described herein.

## COUNT X

### Amended Damages as a Result of False Claims, Etc., by Defendants
### (By Plaintiff/Relator Against All Defendants)
### 31 U.S.C. §§ 3729(a)(1) and 3729(a)(2)

117. Paragraphs 1-116 of the First Amended Complaint are hereby expressly incorporated herein by reference as if the same were fully set forth herein

118. On information and belief, approximately 40%, or approximately $1.3 billion of the $3,250,000,000 paid to PWC through July 25, 2006, represents the purchase of market ready items.

119. Since the commencement of the First PV Contract, Defendants have intentionally caused the percentage of local market ready items to be purchased from TSC, rather than purchase Berry Amendment food items, to be increased over time so as to realize greater profits. Plaintiff/Relator has also done extensive analysis of, among other things, various PWC invoices submitted to the United States Government and compared them to prices and quotes supplied by approved

sources and actual suppliers (and, in certain cases, retail prices charged by TSC, itself, to the average consumer off the street in its Kuwaiti retail centers) for the same time periods and has determined that Defendants have and are consistently illegally and improperly inflating the costs of the market ready items charged to the United States Government by between 30-60%!

120. Conservatively, assuming that the illegal mark-ups by Defendants were only 30% for local market ready items, the damages alone to the United States Government to date exceed $400 million!

121. The United States Government has paid the unauthorized or inflated and false claims to Defendant PWC, and PWC's co-Defendants have profited along with PWC by reason of said claims. As a result of the conduct alleged in this First Amended Complaint for relief, the United States Government has been damaged in an amount exceeding $500,000,000.00 to date, and the fraud continues unabated. Pursuant to 31 U.S.C. § 3729(a), the United States Government *ex rel.* Plaintiff/Relator is entitled to recover from Defendants, three times the amount of damages which it has sustained by reason of such amended claims, in excess of $1.5 billion  The United States Government *ex rel* Plaintiff/Relator is further entitled to recover from the Defendants, a civil penalty of $10,000.00 for each false

claim submitted by PWC and its co-Defendants in an amount to be determined at trial pursuant to 31 U S.C A 3729(a).

122. Defendants must disgorge said monies.

WHEREFORE, having amended the Original Complaint by adding the foregoing Counts thereto, Plaintiff/Relator PRAYS for judgment and relief as follows:

(a) On <u>Count I</u> (False Claims Act – Presentation of False Claims), against Defendants, jointly and severally, for damages trebled, in an amount to be determined at trial, and civil penalties as allowed by law, together with costs, including the cost of investigation and interest.

(b) On <u>Count II</u> (False Claims Act – Use of False Statements), against Defendants, jointly and severally, for damages trebled, in an amount to be determined at trial, and civil penalties as allowed by law, together with costs, including the cost of investigation and interest.

(c) On <u>Count III</u> (False Claims Act - Conspiracy), against all Defendants, jointly and severally, for damages trebled, in an amount to be determined at trial, and civil penalties as allowed by law, together with costs, including the cost of investigation and interest.

(d) On <u>Count IV</u> (Breach of Contract), against all Defendants, jointly and severally, for damages, in an amount to be determined at trial, and civil penalties as allowed by law, together with costs, including the cost of investigation and interest.

(e) On <u>Count V</u> (Payment Under Mistake of Fact), against all Defendants, jointly and severally, for damages, in an amount to be determined at trial, and civil penalties as allowed by law, together with costs, including the cost of investigation and interest.

(f) On <u>Count VI</u> (Unjust Enrichment) against all Defendants, jointly and severally, for damages, in an amount to be determined at trial, and civil penalties as allowed by law, together with costs, including the cost of investigation and interest.

(g) On <u>Count VII</u> (Continuation of False Claims Involving the Second PV Contract), against all Defendants, jointly and severally, for treble damages, in an amount to be determined at trial, and civil penalties as allowed by law, together with costs, including the cost of investigation and interest

(h) On <u>Count VIII</u> (Illegal Rebate Kickback Scheme By Defendants), against all Defendants, jointly and severally, for treble damages, in an

amount to be determined at trial, and civil penalties as allowed by law, together with costs, including the cost of investigation and interest.

(i) On <u>Count IX</u> (False Claims Act - Presentation of False Claims - Pricing Scam for Local Market Ready Products in Jordan), against all Defendants, jointly and severally, for treble damages, in an amount to be determined at trial, and civil penalties as allowed by law, together with costs, including the cost of investigation and interest.

(j) On <u>Count X</u> (Amended Damages as a Result of False Claims, Etc., by Defendants), against all Defendants, jointly and severally, for treble damages, in an amount to be determined at trial, and civil penalties as allowed by law, together with costs, including the cost of investigation and interest.

(k) An award to Plaintiff/Relator of the maximum amounts allowed pursuant to U.S.C.A § 3730(d) and other applicable statutes and rules.

(l) An award to Plaintiff/Relator for all costs and expenses of this action, including attorney's fees.

(m) All such other and further relief in favor of the United States of America and Plaintiff/Relator as the Court may deem just, proper and equitable

**A JURY TRIAL IS DEMANDED UPON ALL ISSUES SO TRIABLE PURSUANT TO RULE 38, FEDERAL RULES OF CIVIL PROCEDURE.**

This 25th day of September, 2006.

Respectfully submitted,

**SIMS MOSS KLINE & DAVIS LLP**

By: _____
Raymond L. Moss
Georgia Bar No. 526569
Counsel for Plaintiff/Relator

By: _____
Gerald B. Kline
Georgia Bar No. 425175
Counsel for Plaintiff/Relator

Three Ravinia Drive, Suite 1700
Atlanta, Georgia 30346-2133
Telephone No. (770) 481-7200
Facsimile No. (770) 481-7210
Email: rlmoss@smkdlaw.com
Email: gbkline@smkdlaw.com

_____
Jerome J. Froelich, Jr
Georgia Bar No. 278150
Special Counsel for Plaintiff/Relator

Two Midtown Plaza
1349 West Peachtree Street, Suite 1250
Atlanta, Georgia 30309
Telephone No. (404) 881-1111
Facsimile No. (404) 881-8040
Email: mckfroe@aol.com