UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *ex rel*. KAMAL MUSTAFA | ) | |
| AL-SULTAN, | ) | |
| | ) | |
| Plaintiff/Relator, | ) | |
| | ) | |
| v. | ) | Civil Case No. 1:05-CV-02968-TWT |
| | ) | |
| THE PUBLIC WAREHOUSING | ) | |
| COMPANY--K.S.C. d/b/a PWC | ) | |
| LOGISTICS; THE SULTAN CENTER | ) | |
| FOOD PRODUCTS COMPANY, | ) | |
| K.S.C.; TAREK ABDUL AZIZ | ) | |
| SULTAN AL-ESSA; CHARLES | ) | |
| TOBIAS SWITZER; and EMAD | ) | |
| ALSALEH, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**RELATOR'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR
AUTHORIZATION OF ALTERNATIVE SERVICE**

Plaintiff/Relator Kamal Mustafa Al-Sultan ("Relator") hereby files this Reply

Brief in Support of His Motion for an Order Authorizing Alternative Service upon

Defendants The Public Warehousing Company – K.S.C. d/b/a PWC Logistics n/k/a

Agility Public Warehousing Company – K.S.C. ("PWC"), The Sultan Center Food

Products Company, K.S.C. ("TSC"), Tarek Abdul Aziz Sultan Al-Essa ("Al-Essa"),

1

Charles Tobias Switzer ("Switzer"), and Emad Alsaleh ("Alsaleh") pursuant to Fed. R. Civ. P. 4(f)(3). Defendants PWC and Al-Essa filed a response to the Motion, and Defendant Switzer filed a late and untimely response. Defendants TSC and Alsaleh have not responded to the Motion.

Relator adopts and incorporates the arguments made by the United States in its Reply in Support of Motion for Leave to Serve Defendants Residing in Kuwait by Alternative Means [Doc. 137]. The Court has recently granted the United States' Motion, authorizing the United States to serve PWC and TSC by alternative service. See Order, Feb. 4, 2016 [Doc. 140]. Relator makes the further arguments below as to all Defendants, including the three individual Defendants not included in such Order - Al-Essa, Switzer and Alsaleh who were all senior officers of Defendant PWC and were all intimately involved in the fraud outlined in this action. Al-Essa and Switzer remain senior officers of Defendant PWC.

## Overview

Defendants are essentially seeking immunity from this Court in the face of one of the largest qui tam actions brought and the largest qui tam action ever involving wartime fraud. Defendants purposefully engaged in business transactions with the United States government. Defendants, over a period of 6 years, signed multiple solicitations, contracts and amendments thereto (which paid them

handsomely—well in excess of $8 billion dollars) expressly agreeing and recognizing therein that United States law would apply. Now, in the face of allegations that they committed over a billion-dollar fraud against the United States government, Defendants declare that they cannot be served under United States law. They make this argument despite actual notice of this lawsuit from a variety of legal actions, despite initiating or fighting at least 93 other litigations in United States courts, despite having at least 38 subsidiaries in the United States (all of whom, along with Defendants, have been suspended from contracting with the United States), and despite continuing to do business in the United States with many dozens of other contracts. Relator seeks alternative service because it is clear that diplomatic channels and other methods are not working. If alternative service is not allowed, Defendants—including a United States citizen—would essentially be granted immunity after profiting from over a billion-dollar fraud on the United States government and the U.S. taxpayers. Rule 4(f)(3), however, permits alternative service in cases like this. Defendants will be given their day in court. But refusing alternative service would be allowing the fraud against the United States government by private entities to go unanswered and would be an affront to the United States, the U.S. taxpayers, and our veterans who helped and risked their lives (many died) defending the State of Kuwait in its time of need during the two Middle East Gulf

3

Wars.

## I.      This Court has the discretion to order alternative service in this case.

Rule 4(f)(3) empowers the Court with flexibility and discretion in using a manner of service suited for the facts and circumstances of a particular case. *See, e.g.*, *BP Prods. N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006) (Rule 4(f)(3) gives the court "wide discretion" to order service); *In re Int'l Telemedia Assocs., Inc.*, 245 B.R. 713, 719 (N.D. Ga. 2000) (granting email service under Rule 4(f)(3)). By its plain language, Rule 4(f)(3) allows the court to allow alternative service by a means "not prohibited by international agreement." Just as occurred in *U.S. ex rel Bunk v. Birkart Globistics GmbH & Co.*, No. 1:02cv1168 (AJT/TRJ), 2010 WL 423247 (E.D. Va. Feb. 4, 2010), in this case a foreign court has determined that the Hague Convention does not apply. If this Court accepts the foreign court's ruling, then there is no "international agreement" that would prohibit alternative service, and Rule 4(f)(3) would therefore permit service.[1] Defendants, however, seek

---

[1] Relator contends, however, that it has properly served certain defendants under the Hague Convention, and there is still pending before this Court Relator's Motion to Clerk of Court for Entry of Default Against Certain Defendants. *See* Pl.'s Mot. [Docket No. 81]; *see also* Aff. of Rick Hamilton (showing that service under the Hague was proper on Defendants Agility Public Warehousing Co., Charles Tobias Switzer and Tarek Abdulaziz Sultan Alessa.) [Docket No. 81-3]. By seeking

to limit this Court's discretion in several ways. Relator shows below that this Court would properly exercise its discretion if it granted alternative service.

**A.      Kuwaiti law does not prohibit alternative service in this case.**

Defendants argue—despite the plain language of Rule 4(f)(3) referring to "international agreement"—that alternative service should not be used because it would violate Kuwaiti law. Kuwaiti law, however, is not at issue for two reasons: first, Defendants contractually agreed that United States law would apply; and, second, considerations of Kuwaiti law (particularly when there is no evidence of any Kuwaiti law specifically prohibiting service) do not apply in this case, which involves private defendants alleged to have committed fraud against the United States government.

**1.      *Defendants contractually agreed that United States law applies.***

Whether Kuwaiti law would be violated—even though it would not—is not at issue here because Defendants have already understood and agreed that United States law would apply when they first signed the solicitations, contracts and modification and amendments for the two main prime vendor contracts (SP0300-03-D-3061 (the "First PV Contract") and SPM300-05-D-3128 (the "Second PV

---

alternative service, Plaintiff is proceeding in an abundance of caution in order to avoid any further delay in this case, and is not waiving his right to pursue the arguments already made in the Motion for Default.

Contract")) to feed the U.S. troops in Iraq, Kuwait and Jordan during the two Gulf Wars underlying this case. DFARS 252.233-7001 Choice of Law (Overseas) (JUN 1997) is included and incorporated into these contracts, and it specifically states that:

> *"This contract shall be construed and interpreted in accordance with the substantive laws of the United States of America."*

The clause also specifically provides that:

> *"By the execution of this contract, the Contractor expressly agrees to waive any rights to invoke the jurisdiction of local national courts where this contract is performed* and agrees to accept the exclusive jurisdiction of the United States Armed Services Board of Contract Appeals and the United States Court Of Federal Claims for the hearing and determination of any and all disputes that may arise under the Disputes clause of this contract."[2]

Therefore, Defendants entered these contracts with the expectation that United States law, including its service laws and procedures, would apply.

In fact, Defendant Switzer, whose titles ranged from General Manager, Managing Director, Chief Executive Officer of its U.S. controlled subsidiary Agility DGS, and finally as President & CEO in 2007 (he signed in this capacity in

---

[2] *See* Solicitation SP0300-02-R-4003 for the First PV Contract and Solicitation SPM300-04-R-0323 for the Second PV Contract, together with the related amendments and modifications. Defendant PWC entered into these contracts, and Defendant Switzer signed them on behalf of Defendant PWC. See the selected pages with that contract language attached as Exhibit 1.

Amendment Number 36 to SPM300-05-D-3061) where he was head of Defendant PWC's U.S. Government Contracts Division and Prime Vendor Program at issue in this case and the criminal case. Defendant Switzer was the one who signed most, if not all, of these contracts, modifications and amendments. A list of all of his senior management titles during these prime vendor contracts at issue, together with exhibits containing his signatures and other proofs, are attached as <u>Exhibit 2</u>. At the same time, Defendant Switzer was also the head of one of Defendant PWC's U.S. subsidiaries, Agility Defense and Government Services, Inc., believed to be a Delaware corporation, until he was succeeded by Dan Mongeon, another former high ranking military official in 2008, a year before the criminal indictment. Defendant Switzer, an American citizen and retired U.S. Navy Commander, is still employed by Defendant PWC in Kuwait.

To urge this Court to grant them immunity based on Kuwaiti law which is the end result if service can only be done through diplomatic channels - when Defendants entered into the contracts knowing that a provision contained therein stated that United States law would apply would be unjust in the face of the massive fraud committed against the United States.

**2.** ***Kuwaiti law does not prohibit service under the facts of this case.***

The case primarily relied on by Defendants for their argument that Kuwaiti

law applies, *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916 (11th Cir. 2003), must be limited to its facts. In *Prewitt Enterprises*, there was a lawsuit against the Organization of the Petroleum Exporting Countries ("OPEC"), which is an intergovernmental organization under Austrian law and Austrian specifically limited how such organizations could be served in cases from abroad. 353 F.3d at 925-27. When the Eleventh Circuit held that OPEC could not be served under Rule 4(f)(3), it found that allowing service would be a "substantial affront to Austrian law" in the face of "Austria's direct prohibition of service on OPEC without its consent." *Id.* at 927. The Court further found that the facts in *Prewitt Enterprises* were unlike facts in other cases, where, for instance, the defendant was a private company doing business in the United States and had a presence and agents in the United States. *Id.* at 928. Here, too, the Court should look at all the facts of this case. In this case, several facts distinguish it from *Prewitt Enterprises* and show that there would be no "substantial affront" to the uncited Kuwaiti law:

- Defendants are private parties, not an intergovernmental organization;

- Defendant Switzer, a retired U.S. Navy Commander, is a United States citizen living abroad under the continued employment and protection of

Defendant PWC (likely evading criminal indictment[3]);

- Defendants did over $8 billion of business with the United States government with respect to the prime vendor contracts at issue alone in which they contractually expressly agreed in each of such solicitations, amendment and modifications that United States law would apply; and

- Defendants have and continue to have a very active presence in the United States, through at least 38 subsidiaries,[4] involvement in at least 93 other litigations, and employ U.S. attorneys including those who have made an appearance in this case.

Even in the cases cited by Defendants that unnecessarily extended *Prewitt Enterprises'*s reach, when considering a foreign country's law, the court will look to

---

[3] Although Defendant Switzer has not been indicted, the Wartime Suspension of Limitations Act suspends the statute of limitations for any offense involving fraud against the federal government. 18 U.S.C. § 3287. Since July 1, 2010, he remains on the List of Parties Excluded from Federal Procurement and Non-Procurement Programs along with the other Defendants and their affiliates. [See the July 1, 2010 Charles T. Switzer Notice of Suspension Letter contained in Exhibit No. 4 to Relator's Memorandum of Law in Support His Motion for Authorization of Alternative Service ("Relator's Mem.") [Doc. 134-6].

[4] According to PWC's Worldwide Directory, Agility (formerly known as PWC), currently has thirty-eight locations in the United States. *See* Agility Worldwide Directory, available at http://www.agilitylogistics.com/directory/Pages/default.aspx (search by "Country" and "United States"), last accessed Feb. 5, 2016; see also Ex. 6 to Relator's Mem. [Doc. 134-8]. Those locations include two branches here in Atlanta.

see if the proposed alternative method of service is "expressly prohibited" by the foreign country. *See, e.g.*, *Tracfone Wireless, Inc. v. Hernandez*, No. 15-23032, 2015 WL 5165718, at *6 (S.D. Fla. Sept. 2, 2015).

Here, even if this Court finds that *Prewitt Enterprises* should be extended to cover this type of case (one involving private defendants with a presence in the United States, including a U.S. citizen, and involving fraud against the United States) and even if the Court were to consider Kuwaiti law in the face of the contract provision that U.S. law applies, there is no evidence that allowing service here would "expressly" violate Kuwaiti law. Rather, there is evidence that the proposed methods of alternative service are *permitted* by Kuwaiti law in the declaration from Nada Bourahmah, attached as <u>Exhibit 3</u>. Although Defendants PWC and Al-Essa submitted the declaration of a Kuwaiti attorney, the declaration only repeatedly refers to Article 9 and Article 10 of the Kuwaiti Code of Civil and Commercial Procedure (Hamaidan Decl. ¶¶ 3, 5-7 [Doc. 138-3]), despite Defendants claiming that this qui tam action is penal in nature. The Kuwaiti attorney only generally states that service must be done through international agreement when the action is penal in nature, without citing any such law. *Id.* ¶ 2. Similarly, the declaration from the Kuwaiti attorney submitted by Defendant Switzer fails to identify any provision that expressly prohibits service by email, publication, or courier. *See* Al-Ayoub Decl. ¶

10

8 [Doc. 139-3]. Interestingly, Defendant Switzer, a U.S. citizen who has not been indicted, attempts to categorize himself as protected by Kuwaiti criminal law (*id.* ¶ 10 [Doc. 139-3]; Switzer Resp. 8), yet the declaration from the Kuwaiti attorney is silent on service for foreign penal actions in Kuwait. Such evidence cannot support a finding that there would be a "substantial affront" to Kuwaiti law.

Rather, as shown by the declaration from Nada Bourahmah, the methods of service proposed by Relator are not prohibited by Kuwaiti law. In fact, Ms. Bourahmah has pointed to the specific Kuwaiti law that allows service by email (Bourahmah Decl. ¶¶ 13, 15), by courier (*id.* ¶ 14), and by service on the attorneys (*id.* ¶¶ 15-16, 30). Nothing in Kuwaiti law expressly prohibits service by publication. *Id.* ¶ 12. Moreover, under Kuwaiti law, the appearance of a defendant can negate any error in process of service. *Id.* ¶¶ 31-33. These provisions show that Kuwaiti law is flexible and puts an emphasis on the defendant receiving notice. Kuwaiti law also provides that respondents and representatives are to be cooperative and provide assistance needed to effect service of process. *Id.* ¶ 35. This provision shows that, just as United States law does not tolerate gamesmanship, neither does Kuwaiti law. Allowing alternative service in this case would not provide any affront to Kuwaiti law. Rather, by actively avoiding service, defendants are acting contrary to Kuwaiti law, which mandates their cooperation. Therefore, because there is no Kuwaiti law

11

that expressly forbids the proposed methods of alternative service and because defendants have actual notice of this suit, the Court should order alternative service.

**B.      The Court should permit alternative service because it will prevent further gamesmanship by all of the Defendants with the Court.**

On the other hand, allowing alternative service here would serve the purpose of Rule 4(f)(3) because it would stop Defendants from playing games with the Court. Interestingly, in other litigation, some of these same Defendants have recently argued in another qui tam case against Defendants and their affiliates that serving through the Hague Convention would be the proper way to serve, while at the same time contesting service under the Hague Convention in this matter. *See* PWC's Mem. Opp'n to Relator's Mot. for an Order Directing Alternate Service under Fed. R. Civ. P. 4(f)(3) at 6, filed in *U.S. ex rel. Miller v. Public Warehousing Company, K.S.C., a/k/a Agility and PWC*, C.D. Cal., August 18, 2014, Civ. Act. No. 8:10-cv-00526-AG-MLG, Doc. 62, attached as <u>Exhibit 4</u>.

Defendant Switzer, who filed an untimely response to the Motion, is also playing games with the Court by suggesting that the Court should dismiss the entire case because there has been delay and by suggesting that alternative service should not be granted because discovery will be hard to enforce in Kuwait. Switzer's Resp. 14, 18. First, there has been no delay here. There is currently an affidavit on record

12

with this Court [Affidavit of Rick Hamilton, Doc. 81-3] that shows Defendant Switzer was served under the Hague Convention on **January 15, 2012**. The Court has not yet ruled on Relator's Motion to Clerk of Court for Entry of Default Against Certain Defendants [Doc. 81].

As detailed in Relator's Motion, Relator has attempted various methods of service against all Defendants, but Defendants continue to claim that there is not good service, including:

- Relator served Defendants PWC, Switzer, and Al-Essa under the Hague Convention (Relator's Mem. 4-6); [Doc 134-2]), which was challenged in Kuwaiti court;

- Relator attempted service on Defendant TSC under the Hague Convention, then filed a proof of service case under Kuwaiti law, which was also challenged under Kuwaiti law (Relator's Mem. 25);

- Relator attempted service on Defendant Alsaleh under the Hague Convention and filed a proof of service case under Kuwaiti law in Kuwait, which was challenged by Defendant Alsaleh in Kuwait (Relator's Mem. 28).

As the Court noted in its recent Order, "Five years of attempted service to work with the Kuwaiti Central Authority is long enough."

13

In addition, in 2014 Relator filed other similar lawsuits in Kuwait against the Defendants in each case attaching a copy of the English and Arabic translations of his qui tam case. Accordingly, it would be disingenuous and, in fact, no Defendant has yet argued that they are not properly on notice of this lawsuit.  A summary list of those legal actions is attached as Exhibit 5.

Included in these Kuwaiti actions were case number 374/2014 filed against Defendant Switzer in Kuwait in May 2014 and a related appeal action case number 888/2014. Mr. Switzer was represented by Kuwaiti lawyer Ahmal Al-Ruwaih of the law firm of Ahmad Al-Ruwaih & Partner at a hearing held on June 12, 2014. Relator also attached a copy of the English and Arabic translations of his qui tam case in these actions. See Exhibit 6 for English and Arabic translations of such action and appearance.

Defendant Switzer, a U.S. citizen and retired Commander in the U.S. Navy, is also playing games with the court by raising the red-herring argument that service should not be granted because there could be any such problems with discovery or enforcement. There are no cases where alternative service is denied because of problems that may develop later. Even if Defendant Switzer were not a party to this litigation, he, as the head and one of the principal architects and participants in Defendants' government contracts and prime vendor program, would be a crucial

14

witness and will be involved in discovery one way or the other. That is an issue to address later, and it is not ripe now. It is certainly not a reason to not allow alternative service on a U.S. citizen living in a different country, likely seeking to avoid being criminally indicted.

Defendant Switzer attempts to characterize himself as wholly apart from any litigation in the United States by claiming on page 7 of his reply brief that "Switzer is not using the federal courts (or any other state courts) at all. This case is the only case that Mr. Switzer is-or has ever been-involved with. He is not using the courts to pursue claims against others, nor is he using the courts to seek shelter from others claims". But Defendant Switzer misleads the court with this statement. Following the civil intervention by the Department of Justice with respect to certain Defendants in this action and the nearly contemporaneous criminal indictment of Defendants PWC and TSC, an arbitration action was commenced by Defendant PWC seeking over $41 million against another prime vendor contractor. The arbitration was held in Manhattan, New York in February 2010 and all of the individual Defendants in this action—Defendants Switzer, Al Essa and Al-Saleh—invoked the protection of United States law by each "refus[ing] to appear [as witnesses], even by video conference from overseas, claiming the Fifth Amendment Privilege against self-incrimination". See paragraphs 28, 30 and 31 of the Declaration of Robert Begleiter

in Support of Supreme's Supplemental Motion for a Stay and Ant-Suit Injunction

Pending Appeal, filed in the United States Court of Appeals for the Second Circuit,

*Agility Public Warehousing Company K.S. C. et al. v. Supreme Foodservice GMBH*;

Case No. 11-5201, Docket No. 80-2; attached as <u>Exhibit 7</u>. This arbitration panel

rendered their award on August 25, 2011. It should also be noted Defendant Switzer

remains employed by Defendant PWC and during this time Defendant PWC and its

affiliates have been aggressively involved in at least 92 other legal proceedings other

than this action, including the defense of the prime vendor contracts at issue and

related claims. See Exhibit 3 to Relator's Mem. [Doc. 134-2].  In at least one of these

actions which directly relates to the allegations in this qui tam action (*PWC v. DSCP*,

1:07-cv-00502 - Exhibit B to Motion for Preliminary Injunction and Expedited

Hearing - Declaration of C.T. ("Toby") Switzer), Switzer filed affidavits in support

of Defendant PWC's positions and defenses. In this affidavit, Defendant Switzer

admits, among other things, that his primary duties involved "leading the company's

Defense and Government business sector" and was "a member of the Corporate

Management Board, which is the internal group responsible for the company's over-

all performance and decision making" (see page 1 of Switzer's affidavit attached

hereto as <u>Exhibit 8</u>.

     The Court should permit Relator to use alternative service, as it has the

government, the case can continue without further delay and without further gamesmanship.

## C.   The proposed methods of alternative service meet the constitutional requirements of giving notice.

This Court is therefore free to exercise its wide discretion in ordering service in such a way that is reasonably calculated to apprise the parties of the pendency of this action, which meets the constitutional requirement. *In re Int'l Telemedia Assocs., Inc.*, 245 B.R. at 721. And, in this case, Relator reminds the Court that Defendants have actual notice of this lawsuit. Relator's Mem. 12-15, 26-27 [Doc. 134-2]. Although Defendants insist that actual notice does not matter, courts do consider whether the defendant has actual notice in determining the type of alternative service to order. *See Gurung v. Malhotra*, 279 F.R.D. 215, 220 (S.D.N.Y. 2011) (granting default judgment after determining that alternative service under Rule 4(f)(3) was proper based in part on the defendants' actual notice of the lawsuit). So if a defendant has actual knowledge of the lawsuit, then certain service methods are more appropriate. *See, e.g.*, *S.E.C. v. Tome*, 833 F.2d 1086, 1093 (2d Cir. 1987) (upholding service by publication when defendants had actual knowledge of the lawsuit). Service on counsel is also appropriate, particularly where the defendant has actual notice of the lawsuit. *Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y.

2013). None of the Defendants who have filed responses have challenged the assertion that there exists adequate communication between each of them and their U.S. counsel to ensure that each of them would receive adequate notice, nor did any Defendant contest that service by publication would provide adequate notice. The service methods offered in Relator's Motion for alternative service meet the constitutional standards because they are reasonably calculated to give notice.

## Conclusion

Despite the broad discretion granted courts in ordering alternative service under Rule 4(f)(3), Defendants argue that this Court has limited discretion. They have argued that Kuwaiti law prevents alternative service, even though it does not and even though Defendants expressly contractually agreed to be bound by United States law in the prime vendor contracts at issue. As the Court in its recent Order granting the United States leave for alternative service, the focus is on whether an international agreement prohibits such service, and it does not. Therefore any offense to Kuwaiti law is minimized. The proposed service methods meet the constitutional requirements by being reasonably calculated to give Defendants (who are all clearly well aware of this action) notice of the lawsuit. Relator asks the Court to grant its Motion against all Defendants.

Respectfully submitted this 10th day of February, 2016.

**MOSS & GILMORE LLP**


By: /s/ Raymond L. Moss
    Raymond L. Moss
    Georgia Bar No. 526569
    Lead Attorney for Kamal Mustafa Al-
    Sultan, Plaintiff/Relator

3630 Peachtree Road, NE
Suite 1025
Atlanta, Georgia 30326
Telephone: (678) 381-8600
Facsimile No. (815) 364-0515
Email: rlmoss@mossgilmorelaw.com


By: /s/ Jerome J. Froelich, Jr.
    Jerome J. Froelich, Jr.
    Georgia Bar No. 278150
    Attorney for Kamal Mustafa Al-Sultan,
    Plaintiff/Relator

McKENNEY & FROELICH
1360 Peachtree Street
One Midtown Plaza, Suite 910
Atlanta, Georgia 30309
Telephone: (404) 881-1111
Email: JFroelich@mckfroeatlaw.com

**CERTIFICATE OF COUNSEL REGARDING FONT SIZE**

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D).

This 10th day of February, 2016.

**MOSS & GILMORE LLP**

By: /s/ Raymond L. Moss
  Raymond L. Moss
  Georgia Bar No. 526569

## CERTIFICATE OF SERVICE

I hereby certify that on this day I have caused a copy of the foregoing document to be electronically filed with the Clerk of Court using the CM-ECF system, which will automatically send e-mail notification of such filings to all attorneys of record.

This 10th day of February, 2016.

**MOSS & GILMORE LLP**


By: /s/ Raymond L. Moss
  Raymond L. Moss
  Georgia Bar No. 526569


3630 Peachtree Road, N.E.
Suite 1025
Atlanta, Georgia 30326
Telephone: (678) 381-8601
Facsimile: (815) 364-0515
Email: rlmoss@mossgilmorelaw.com