**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KAMAL MUSTAFA AL- SULTAN,   Plaintiff/Relator,   v.   THE PUBLIC WAREHOUSING COMPANY, K.S.C. et al.,   Defendants. | No. 1:05-cv-2968-TWT |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EMAD AL-SALEH'S MOTION FOR EXTENSION OF TIME AND MOTION FOR RECONSIDERATION[1]**

At the time the Court considered and decided relator's Motion for Authorization of Alternate Service, defendant Emad Al-Saleh had not been served and had no reason to make even a limited appearance in this matter. This is Al-Saleh's first "bite" at responding to that motion. For the reasons that follow, Al-Saleh respectfully requests that the Court reconsider its decision allowing alternate service and deny relator's motion as it relates to him.

---

[1] Mr. Al-Saleh is specially appearing here to seek reconsideration of the Court's order authorizing service on Al-Saleh by alternate means. By filing this memorandum, Al-Saleh does not admit that service has been effective, that this Court has jurisdiction over Al-Saleh, or that venue is proper.

## I. INTRODUCTION

Al-Saleh is only tangentially related to this billion-dollar litigation, as evidenced by the absence of any specific allegations concerning Al-Saleh in relator's Complaints. Cognizant of Al-Saleh's marginal role in this dispute, relator made only a single effort to serve Al-Saleh, which failed in June 2011 because relator provided an unclear address to Kuwait's Central Authority under the Hague Convention on Service Abroad.

In January 2016, when relator decided to seek leave to serve defendants by alternate means, he included Al-Saleh in his request. But relator obscured the fact that not one of the reasons he identified in favor of service by alternate means applies to Al-Saleh. On the other side of the scale, *all* of the factors militating against service by alternate means do apply to Al-Saleh. Moreover, one of the four methods of service that relator requested, international courier, is "prohibited by international agreement" and therefore impermissible under Federal Rule of Civil Procedure 4(f)(3).

Accordingly, the Court should reconsider its May 13, 2016 order allowing service by alternate means on Al-Saleh.[2]

---

[2] Local Rule 7.2(E) states that, "[w]henever a party or attorney for a party believes it is absolutely necessary to file a motion to reconsider an order or judgment, the motion shall be filed with the clerk of court within twenty-eight (28) days after

## II. BACKGROUND

Relator alleges fraud in an amount exceeding one billion dollars over the period from May 2003 through at least October 2009.  Compl. ¶ 25; 2d Am. Compl. ¶¶ 129, 132.  Relator's Complaint, First Amended Complaint, and Second Amended Complaint allege that defendants, who are two companies and three individuals, overcharged the U.S. government in connection with defendant PWC's provision of food items to the U.S. military in the Middle East as a Prime Vendor.  Al-Saleh, who left the Prime Vendor project in early 2005, is mentioned in three paragraphs of the Complaint (¶¶ 8, 22, 77), none of which alleges any specific acts on his part.

Relator brought suit in November 2005.  In November 2009, the government intervened in part only, while declining to intervene against Al-Saleh and Charles

---

entry of the order or judgment."  Reasonably read, this provision encompasses only the parties who sought or opposed the order or judgment to be reconsidered, rather than those who were not taking part in the case when the order or judgment issued.  *Cf. Coleman v. Clayton Cty.*, No. 06-cv-1207, 2007 U.S. Dist. LEXIS 16560, at *4 (N.D. Ga. Mar. 7, 2007) ("[T]he function of a motion for reconsideration is not 'to give the moving party another "bite at the apple."'" (quoting *Mincey v. Head*, 206 F.3d 1106, 1137 (11th Cir. 2000))).  In an abundance of caution, Al-Saleh is also moving for an extension of time to file the instant motion.  The Court should grant the requested extension.  By all accounts, Al-Saleh had not been served and had not had cause to appear in this matter when the Court considered and decided relator's Motion for Authorization of Alternate Service.  The interests of justice require that Al-Saleh receive an opportunity to rebut relator's one-sided presentation, which failed to distinguish between Al-Saleh and other defendants differently situated.

Tobias Switzer. ECF No. 65.[3] The Court then unsealed the three iterations of relator's Complaint. ECF No. 66. Fourteen months later, in January 2011, relator caused summonses to issue as to all defendants. ECF No. 75.

Relator asked Kuwait's Central Authority under the Hague Convention on Service Abroad to serve judicial documents on defendants. In June 2011, the Central Authority returned the documents concerning Al-Saleh to relator "after failure of service, due to the unclear given address of the person to be served." ECF No. 134-22; ECF No. 134-2, at 4-5, 28. Relator made no attempt to rectify his defective effort to serve Al-Saleh. Relator's efforts to serve other defendants initially appeared to be more successful, until the Kuwaiti courts determined that the Hague Convention does not permit relator to serve a False Claims Act suit on defendants residing in Kuwait. ECF No. 134-4.

In January 2016, relator filed a Motion for Authorization of Alternate Service pursuant to Federal Rule of Civil Procedure 4(f)(3). Relator contended that service by alternate means would be an appropriate exercise of the Court's discretion because (he said): (a) defendants have been litigating other disputes in U.S. courts; (b) defendants have sought out the protection of U.S. courts in those

---

[3] The government's Complaint in Intervention ultimately did not name Tarek Abdul Aziz Sultan Al-Essa as a defendant, either. ECF No. 71.

matters; (c) defendants received a copy of relator's Complaint in other proceedings; (d) defendants have filed public financial documents discussing relator's lawsuit; and (e) in relator's view, relator had already served defendants under the Hague convention.  *See* ECF No. 134-2, at 7-15.

The defendants who had been involved at earlier stages of this proceeding or its criminal counterpart opposed relator's motion.  These defendants highlighted the Eleventh Circuit's admonition that courts must "minimize[] offense to foreign law," and must not "read [Rule] 4(f)(3) as permitting that which has already been specifically prohibited under" other paragraphs of Rule 4(f).  *Prewitt Enters. v. OPEC*, 353 F.3d 916, 926-27 & n.20 (11th Cir. 2003).  They also pointed out that relator "failed to exercise diligence in attempting to effectuate service on a foreign defendant."  *Harris v. Orange S.A.*, 636 Fed. App'x 476, 486 (11th Cir. 2015).

On May 13, 2016, the Court allowed relator's Motion for Authorization of Alternate Service as to all defendants.  With regard to Al-Saleh, the Court ordered service by four methods:  through a LinkedIn account, through the Kuwaiti law firm Al-Hekook, through publication in a Kuwaiti newspaper of general circulation, and through international courier.  On July 14, 2016, relator informed Al-Saleh that relator believes he has complied with the May 13, 2016 order.

### III.   ARGUMENT

A.   **THE CIRCUMSTANCES SUPPORT RECONSIDERATION**

"A district court has discretion to revise or reconsider interlocutory orders at any time before final judgment has been entered." *Lovett v. SJAC Fulton IND I, LLC*, No. 14-cv-983, 2016 U.S. Dist. LEXIS 22398, at *7 (N.D. Ga. Feb. 24, 2016) (citing *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000)). While "motions for reconsideration shall not be filed as a matter of routine practice," L.R. 7.2(E), "[t]he decision to grant a motion for reconsideration is committed to the sound discretion of the district court." *Zinn v. GMAC Mortg.*, No. 05-cv-1747, 2006 U.S. Dist. LEXIS 49855, at *2-3 (N.D. Ga. Apr. 5, 2006) (citing *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216 (11th Cir. 2000)).

"[T]he function of a motion for reconsideration is not 'to give the moving party another "bite at the apple."'" *Coleman*, 2007 U.S. Dist. LEXIS 16560, at *4 (quoting *Mincey*, 206 F.3d at 1137). "Rather, such motions 'should be reserved for certain limited situations, namely the discovery of new evidence, an intervening development or change in the law, or the need to correct a clear error or prevent a manifest injustice.'" *O'Malley v. Avalon Mortg., Inc.*, No. 09-cv-0119, 2010 U.S.

Dist. LEXIS 34463, at *2 (N.D. Ga. Apr. 7, 2010) (quoting *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 674 (N.D. Ga. 1997)).

By all accounts, Al-Saleh had not been served, and had had no cause to make even a limited appearance, at the time the Court considered and decided relator's Motion for Authorization of Alternate Service. Al-Saleh is not seeking to "reargue" that motion. For the reasons that follow, reconsideration is warranted here because of "an intervening development," namely Al-Saleh's appearance to present the facts specific to him, and because of "the need to correct a clear error or prevent a manifest injustice." *Id.*

**B.    THE COURT SHOULD RECONSIDER ITS DECISION TO ALLOW SERVICE ON AL-SALEH BY ANY ALTERNATE MEANS**

The Court may order service in a foreign country by "means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). The decision whether to permit or deny service by alternate means is subject to the Court's sound discretion, given that "the plain language of the rules stipulates that the district court 'may' direct alternative means of service." *Prewitt*, 353 F.3d at 920. The Court should reconsider its discretionary decision to allow service by *any* alternate means on Al-Saleh.

### 1. None of Relator's Arguments for Service by Alternate Means Applies to Al-Saleh

Relator suggested that service by alternate means would be an appropriate exercise of the Court's discretion for several reasons. By lumping Al-Saleh together with the other defendants in his Motion for Authorization of Alternate Service, relator masked the fact that not one of the reasons on which he relied applies to Al-Saleh.

*First*, relator argued that "Defendants are actively involved in scores of litigation matters in the U.S." ECF 134-2, at 7. More specifically, relator stated that certain defendants "have active involvement in at least 93 matters in courts throughout the U.S. since 2005," including matters in the Northern District of Georgia and the Eleventh Circuit. *Id.* Al-Saleh, however, had never been a party to any litigation in the United States until his special appearance in the instant matter. *See* Declaration of Emad A. Al-Saleh, ¶ 3, attached hereto as Exhibit A.

*Second*, relator argued that PWC and its affiliates were "served a copy of Relator's Qui Tam Complaint through . . . litigation" in other proceedings. ECF 134-2, at 7-8. Al-Saleh, on the other hand, had never received a copy of relator's filings, whether through other proceedings or in any other way. Al-Saleh Decl. ¶ 4.

*Third*, relator argued that PWC and related entities have "sought the protection of the U.S. courts" by filing a 2008 bid protest, initiating proceedings before the Armed Services Board of Contract Appeals, "actively litigat[ing] to lift" suspensions from contracting with the U.S. government, and engaging in civil discovery in other cases. ECF 134-2, at 8-12. Al-Saleh has never sought the protection of American courts. Al-Saleh Decl. ¶ 5. He has never filed a bid protest. *Id.* He has never initiated proceedings before the Armed Services Board of Contract Appeals. *Id.* He has never sought discovery in any proceedings in the United States. *Id.* Unlike other defendants, Al-Saleh has never been suspended from contracting with the U.S. government, and consequently has never had reason to litigate such a suspension. *Id.* ¶ 6.

*Fourth*, relator argued that certain defendants have "signed quarterly statements and annual financial reports . . . acknowledg[ing] the 'civil qui tam lawsuit against [PWC] under the False Claims Act.'" ECF 134-2, at 12-15. Al-Saleh has never made or signed such public statements or reports. Al-Saleh Decl. ¶ 7.

*Finally*, relator relied in large measure on his prior efforts to serve defendants under the Hague Convention. ECF 134-2, at 4-6. Relator maintained that, "[i]n January 2012, Relator perfected service upon PWC, Al-Essa, and

9

Switzer pursuant to the Hague Convention," but that "[t]he three served Defendants . . . sought relief from the Kuwaiti courts," which ultimately quashed relator's service efforts. *Id.* at 4-5. Relator concedes, however, that his initial attempt to serve Al-Saleh was defective. ECF No. 134-2, at 4-5, 28; ECF No. 134-22. Because relator never attempted to rectify his defective service, Al-Saleh has never had cause to seek relief from service in Kuwaiti courts. Al-Saleh Decl. ¶ 9. Relator's efforts to serve Al-Saleh have thus been limited to (a) providing Kuwait's Central Authority with an unclear address; (b) waiting four and a half years; and (c) seeking leave for service by alternate means.

In sum, relator's presentation obscured the fact that none of the reasons relator presented for his request to serve defendants by alternate means applies to Al-Saleh. Al-Saleh is no more than an afterthought to relator's feud with other defendants. Just as laconic references to Al-Saleh in relator's Complaints do not make Al-Saleh guilty by association, relator's inclusion of Al-Saleh in his Motion for Authorization of Alternate Service does not make Al-Saleh amenable by association to service.

### 2. Important Considerations Counsel Against Service by Alternate Means

While none of relator's reasons for seeking service by alternate means applies to Al-Saleh, the key considerations that counsel against such service with regard to other defendants apply equally to Al-Saleh.

To begin with, the courts of Kuwait have ruled that relator cannot serve his False Claims Act Complaints on defendants pursuant to Federal Rule of Civil Procedure 4(f)(1). ECF No. 134-4. The Eleventh Circuit's decision in *Prewitt* points to two related ways in which the Kuwaiti courts' rulings militate against service by alternate means: such service would offend foreign law, and it would circumvent the proper confines of service under Rule 4(f)(1).

*Prewitt* holds that decisions on whether to authorize service by alternate means are required to "minimize offense to foreign law." 353 F.3d at 927 & n.20 (quoting 1993 Advisory Comm. Notes to Fed. R. Civ. P. 4(f)(3), and citing *Mayoral-Amy v. BHI Corp.*, 180 F.R.D. 456 (S.D. Fla. 1998); *Lord v. Living Bridges*, No. 97-cv-6355, 1999 U.S. Dist. LEXIS 11712 (E.D. Pa. July 22, 1999)). In *Prewitt*, service under Rule 4(f)(3) would have contradicted Austrian statutes prohibiting service on the defendant, OPEC, without its consent. *Id.* at 927. The Eleventh Circuit consequently affirmed the district court's refusal to permit service by any alternate means. In the current case, service by alternate means is a head-

on offense to the Kuwaiti courts' rulings that relator is not permitted to serve his False Claims Act Complaints in Kuwait.

*Prewitt* also cautions that Rule 4(f)(3) must not enable plaintiffs to "circumvent[]" other portions of Rule 4(f). 353 F.3d at 927. When the *Prewitt* plaintiff's attempt at service under Rule 4(f)(2) failed, that plaintiff "contend[ed] that . . . the district court still had the discretion to order service of process pursuant to Fed. R. Civ. P. 4(f)(3)." *Id.* at 926. The Eleventh Circuit affirmed the district court's rejection of this theory, explaining that:

> there is no abuse of discretion here; on the contrary, any circumvention of 4(f)(2)(C)(ii) by the district court . . . would constitute such an abuse. . . . [W]e cannot read 4(f)(3) as permitting that which has already been specifically prohibited under 4(f)(2).

*Id.* at 927. Rather than facilitating an end run around Rule 4(f)(2), the Eleventh Circuit concluded that there were "no means available for service . . . under the Federal Rules of Civil Procedure." *Id.* at 919. Here, similarly, the Court should not permit relator to circumvent Rule 4(f)(1) through service under Rule 4(f)(3). *See United States ex rel. Bunk v. Birkart Globistics GmbH & Co.*, No. 02-cv-1168, 2010 WL 423247, at *3 (E.D. Va. Feb. 4, 2010) (deeming a ruling of "the German authorities . . . that this action is not within the category of cases covered under the Hague Convention" to be "dispositive on the issue . . . even though an American

12

court would undoubtedly consider this action 'a civil or commercial matter' within the American legal system").

Another factor that disfavors service on Al-Saleh by alternate means is the extreme lack of diligence in relator's service efforts. The Eleventh Circuit has held that "a plaintiff's complaint may be dismissed upon a showing that she failed to exercise diligence in attempting to effectuate service on a foreign defendant." *Harris*, 636 Fed. App'x at 486. A similar result is appropriate here through denial of relator's request to serve Al-Saleh by alternate means.

The Court unsealed relator's Complaints in November 2009. Relator sought leave to serve defendants by alternate means in January 2016. Relator's only effort to serve Al-Saleh in the intervening 74 months was his provision of an unclear address to Kuwait's Central Authority. ECF No. 134-22.[4] Relator made no

---

[4] Relator asserts that he "filed a proof of service case" against Al-Saleh in Kuwait on May 12, 2014. ECF No. 134-2, at 28. In support of this assertion, relator attaches a cryptic, unofficial document on the letterhead of a law firm, Al-Hekook, that relator claims represented Al-Saleh in that case. ECF No. 134-23. To Al-Saleh's knowledge, he was never a party to any "proof of service case." Al-Saleh Decl. ¶ 9. He never participated in any hearing or other event in such a case. *Id*. He never retained Al-Hekook (which PWC retained to represent the company and related individuals, perhaps including Al-Saleh, in relator's Kuwaiti-law case) to represent him in connection with the current action. *Id*. ¶ 10. There would also be no discernible basis for a "proof of service" suit against Al-Selah, given relator's concession that he never properly served Al-Saleh under the Hague Convention. ECF No. 134-2, at 4-5, 28.

13

attempt to cure his defective service attempt during the 55 months after June 2011, when the Central Authority informed him of the defect.

Relator's conduct would have indicated to any reasonable observer that relator had no intention of prosecuting his suit against Al-Saleh.  Indeed, relator's lack of diligence is far more egregious than that of other plaintiffs whose complaints have been dismissed due to inadequate service efforts abroad.  *See, e.g.*, *DEF v. ABC*, 366 F. App'x 250, 253 (2d Cir. 2010) (affirming dismissal where third-party plaintiffs "waited two years before attempting to serve process").[5]

The Court should not permit relator to revive his suit at this late date, seven years since the court unsealed the Complaints and more than a decade after relator brought suit.  In cases involving failure to prosecute under Federal Rule of Civil Procedure 41(b), courts have explained that "an unreasonable delay in service of process . . . can support a motion to dismiss . . . even if the defendant cannot

---

[5] *See also Allstate Ins. Co. v. Hewlett-Packard Co.*, No. 13-cv-2559, 2016 U.S. Dist. LEXIS 18155, at *13 (M.D. Pa. Feb. 16, 2016) (dismissing complaint for "extraordinary" delay where plaintiff waited "at least fourteen months" before attempting service abroad); *Nithyananda Dhanapeetam of St. Louis v. Rao*, No. 13-CV-1683, 2014 WL 1208014, at *3 (E.D. Mo. Mar. 24, 2014) (same for a delay in service of "almost seven months"); *Yellowave Corp. v. Mana*, No. 00-cv-2267, 2000 U.S. Dist. LEXIS 14813, at *7 (S.D.N.Y. Oct. 11, 2000) (same for failure to attempt service abroad "170 days after the Complaint had been filed"); *In re Crysen/Montenay Energy Co.*, No. 93-cv-5372, 1994 U.S. Dist. LEXIS 3699, at *21 (S.D.N.Y. Mar. 25, 1994) (same for delay of "fourteen months").

demonstrate any actual prejudice." *Arundar v. Staff Builders Temp. Pers., Inc.*, 92 F.R.D. 770, 771 (N.D. Ga. 1982) (collecting cases). "Delay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade, and witnesses die or move away." *Veazey v. Young's Yacht Sale & Serv., Inc.*, 644 F.2d 475, 477 (5th Cir. 1981). Relator, not Al-Saleh, should bear the adverse consequences of relator's neglect.

C. **SERVICE BY INTERNATIONAL COURIER IN KUWAIT IS PROHIBITED BY INTERNATIONAL AGREEMENT**

The court's discretion to permit service by alternate means is limited to "means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). This limitation makes service by international courier impermissible in Kuwait.

Kuwait and the United States are signatories to the Hague Convention. Article 10 of the Hague Convention provides that the Convention does not "interfere with the freedom to send judicial documents, by postal channels, directly to persons abroad"—but only "*[p]rovided the State of destination does not object*" (emphasis added). Kuwait is one of the signatories that has objected to Article 10. HCCH, Declaration/Reservation/Notification, https://goo.gl/djYIzF (last visited July 19, 2016). Courts have explained that, in such circumstances, the Hague Convention *does* interfere with the freedom to transmit judicial documents by postal channels. *See, e.g.*, *Calista Enters. Ltd. v. Tenza Trading Ltd.*, 40 F. Supp.

15

3d 1371, 1377 (D. Or. 2014) ("[T]he Czech Republic has objected to service by postal channels under Article 10 of the Convention. Accordingly, service by mail is 'prohibited by international agreement' and thus may not be authorized under Rule 4(f)(3)." (citations omitted)).[6]

Service by international courier is thus "prohibited by international agreement" within the meaning of Federal Rule of Civil Procedure 4(f)(3). Relator should not have been permitted to serve Al-Saleh by this method.

## IV. CONCLUSION

For the foregoing reasons, the Court should reconsider its May 13, 2016 order (ECF No. 147), and should deny relator's Motion for Authorization of Alternate Service (ECF No. 134-1), as far as it concerns Al-Saleh, in its entirety, or in the alternative with regard to service by international courier.

---

[6] *See also Fisher v. Petr Konchalovsky Found.*, No. 15-cv-9831, 2016 U.S. Dist. LEXIS 31014, at *3 (S.D.N.Y. Mar. 10, 2016) ("courts in this district have repeatedly rejected requests to approve service on Russian defendants through the international mail . . . because . . . Russia has objected to Article 10"); *Advanced Aerofoil Techs., AG v. Todaro*, No. 11-cv-9505, 2012 U.S. Dist. LEXIS 12383, at *5 (S.D.N.Y. Jan. 31, 2012) (similar); *Agha v. Jacobs*, No. 07-cv-1800, 2008 WL 2051061, at *1-2 (S.D.N.Y. May 13, 2008) (similar); *cf. Hyundai Merch. Marine Co. v. Grand China Shipping H.K. Co.*, 878 F. Supp. 2d 1252, 1261 (S.D. Ala. 2012) (under Rule 4(f)(1), "'[s]ervice . . . cannot be effected by postal channels' in China" because "China has objected to service by postal channels under Article 10(a)" (quoting *In re LDK Solar Sec. Litig.*, No. 07-cv-05182, 2008 U.S. Dist. LEXIS 90702, at *4 (N.D. Cal. June 12, 2008))).

Respectfully submitted this 5th day of August, 2016.

        POLSINELLI, P.C.

        /s/ Brian F. McEvoy
        Georgia Bar No. 490845
        bmcevoy@polsinelli.com
        Emma R. Cecil
        Georgia Bar No. 076181
        ececil@polsinelli.com
        1355 Peachtree Street NE
        South Tower, Suite 500
        Atlanta, Georgia 30309
        Tel: (404) 253-6000
        Fax: (404) 253-6060

        WHITE & CASE, LLP
        Michael Kendall
        (admission *pro hac vice* pending)
        Massachusetts Bar No. 544866
        michael.kendall@whitecase.com
        Yakov Malkiel
        (admission *pro hac vice* pending)
        Massachusetts Bar No. 689137
        yakov.malkiel@whitecase.com
        75 State Street
        Boston, MA 02109
        Tel: (617) 979-9300
        Fax: (617) 979-9301

        Counsel for Emad Al-Saleh

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KAMAL MUSTAFA AL- SULTAN,  Plaintiff/Relator,  v.  THE PUBLIC WAREHOUSING COMPANY, K.S.C. et al.,  Defendants. | No. 1:05-cv-02968-TWT |

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document was prepared in Times New Roman 14-point font in accordance with Local Rule 5.1.

/s/ Brian F. McEvoy
Georgia Bar No. 490845
Counsel for Emad Al-Saleh

POLSINELLI, P.C.
1355 Peachtree Street NE
South Tower, Suite 500
Atlanta, Georgia 30309
Tel: (404) 253-6000
Fax: (404) 253-6060
bmcevoy@polsinelli.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KAMAL MUSTAFA AL- SULTAN, <br><br> Plaintiff/Relator, <br><br> v. <br><br> THE PUBLIC WAREHOUSING COMPANY, K.S.C. et al., <br><br> Defendants. | No. 1:05-cv-02968-TWT |

## CERTIFICATE OF SERVICE

I hereby certify that on this day I caused a copy of the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which automatically emails notifications of such filings to all counsel of record.

Dated: August 5, 2016

/s/ Brian F. McEvoy
Georgia Bar No. 490845
Counsel for Emad Al-Saleh

POLSINELLI, P.C.
1355 Peachtree Street NE
South Tower, Suite 500
Atlanta, Georgia 30309
Tel: (404) 253-6000
Fax: (404) 253-6060
bmcevoy@polsinelli.com