IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA Ex
Rel, et al.,

        v.

THE PUBLIC WAREHOUSING
COMPANY K.S.C.
also known as
Agility, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:05-CV-2968-TWT

## OPINION AND ORDER

This is a qui tam action.  It is before the Court on the Defendant The Public

Warehousing Company's ("PWC") Motion to Dismiss [Doc. 163-8], the Defendant

The Sultan Center's ("Sultan Center Food Products") Motions to Dismiss for

Insufficient Service [Docs. 181, 195], the Defendant Al-Saleh's Motion to Dismiss

[Doc. 201], the Defendant Switzer's Motion to Dismiss [Doc. 202], and the

Defendants PWC and Al-Essa's Motion to Dismiss [Doc. 205-2]. Although these

motions deal with a wide variety of issues, the Court is addressing the issue of service

of process only in this Order. For the reasons stated below, the Defendants' Motions

to Dismiss [Docs. 163-8, 181, 195, 201, 202, 205-2] are DENIED as to the issue of insufficiency of service.

## I. Background

The Defendants PWC and Sultan Center Food Products are Kuwaiti companies that have allegedly overcharged the United States on defense contracts for supplies to United States' armed forces serving in the Middle East. After a long period of investigation, the United States decided to intervene against these Defendants in 2011. In the six years since then, the Plaintiffs have been diligently attempting to serve the Defendants but have been consistently rebuffed by the Kuwaiti government. As a result of Kuwait's obstructionism, the Court granted the United States' Motion for Service by Alternative Means in an Order entered on February 5, 2016.[1][2]

In that Order, the Court instructed the Plaintiffs to serve PWC by serving its domestic counsel and by publication, and to serve Sultan Center Food Products by email and publication. As to Sultan Center Food Products, the United States sent emails to six different email addresses, four of which were returned as undeliverable. The United States also published a notice in the Kuwait Times.[3] As to PWC, the

---

[1]     Order Granting Pl.'s Mot. for Service by Alternative Means [Doc. 140].

[2]     Order Granting Pl.'s Mot. for Authorization of Alternative Service [Doc. 147].

[3]     See Affidavit of Service [Doc. 169].

United States sent the service documents to PWC's counsel via email, which counsel acknowledged they had received. The United States also sent counsel copies via the United States Postal Service.

The Court also authorized the Plaintiff and Relator Al-Sultan to serve the Defendants through counsel, email, international courier, and publication in an Order on May 13, 2016. The Relator served Sultan Center Food Products by email to the same six email addresses as the United States had done, and likewise received receipts that four were undeliverable. The Relator also sent emails to Sultan Center Food Products' Kuwaiti counsel and sent a copy of the Service Documents via FedEx to their offices. At one office, the FedEx package was originally received by "X. Amal." Later that afternoon, however, "X. Amal" contacted FedEx to return the package because "he did not want the package." Likewise, the other counsel's office tried to return the package because "it did not belong to them." The Relator also sent copies to Sultan Center Food Products' Kuwait address, and published a notice in both the Al Rai and Al Qabas newspapers.[4]

As to PWC, Al-Essa, and Switzer, the Relator served their counsel through mail and email. The Relator also sent print copies through FedEx to PWC's offices in Kuwait, to Switzer and Al-Essa's homes, and published notices in two Kuwaiti

---

[4]      See Affidavit of Service [Doc. 184].

newspapers: Al Rai and Al Qabas. Regarding Switzer and Al-Essa, the courier was originally unable to deliver them to the addresses given. While a correct address for Switzer could not be found, the courier eventually delivered the service documents to Al-Essa at PWC's offices. The package was refused by someone at the office, however, who told the courier that they did not want the package. And lastly, as to Al-Saleh, the Relator served him through email to a LinkedIn account, as well as email and FedEx to his counsel in Kuwait. The Relator also served Al-Saleh at his home in Kuwait, and on Al-Saleh's American counsel that was hired after the Court's Order had already been issued.[5]

The Defendants now move to dismiss both Plaintiffs' Complaints due to insufficient service of process. All of the Defendants effectively make two different arguments. First, they argue that alternative means of service authorized by the Court were legally insufficient.  Second, they argue that the Plaintiffs' actual efforts to carry out service pursuant to the Court's Order were insufficient. The Court has already addressed the first set of arguments in its Orders authorizing alternative means of service, and will not address them again here. The Court, therefore, turns to the second line of argument and addresses whether the Defendants have been sufficiently and effectively served.

---

[5]     See Affidavits of Service [Docs. 183-187].

## II. Legal Standard

Rule 12(b)(5) of the Federal Rules of Civil Procedure allows for a complaint to be dismissed due to insufficient service of process. Rule 4(f) outlines the authorized methods for serving individuals located in a Foreign Country. Rule 4(f)(1) authorizes courts to serve defendants by any internationally agreed means of service, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Rule 4(f)(3) allows courts to authorize by service by other means, as long as they are not prohibited under international agreement. Importantly, Rule 4(f) "does not create a hierarchy of preferred means of service..."[6] Service under 4(f)(3) is just as favored as service under 4(f)(1), and "is merely one means among several which enables service of process on an international defendant."[7] Regardless of which method of service is chosen, the touchstone is whether the means chosen give "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[8]

---

[6]     Gramercy Ins. Co. v. Kavanagh, No. 3:10-CV-1254-D, 2011 WL 1791241, at *1 (N.D. Tex. May 10, 2011). See also 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1134 (4th ed. 2016).

[7]     Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1015 (9th Cir. 2002).

[8]     Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

## III. Discussion

As discussed above, the Court has already spoken on why the alternative means of service it authorized complied with Rule 4(f) and constitutional requirements of due process. At this time, the Court is only addressing the issue of whether the execution of those alternative means complied with the Court's Order and due process. The Court now addresses  service on each Defendant in turn.

### A. The Public Warehousing Company

The United States served PWC by sending copies of its First Amended Complaint to PWC's counsel through email and certified mail, and by publication on one occasion in the Kuwait Times. The Relator Al-Sultan, meanwhile, served PWC by sending copies of his Complaints and summons to PWC's counsel through email and certified mail, to PWC itself through corporate emails and through certified mail to its corporate offices in Kuwait, and through publication in two Kuwaiti newspapers. Both times, PWC's counsel acknowledged receipt of the Complaints.

As the Court said in its previous Order, each of these methods of service was reasonably calculated to provide notice to PWC individually. The Plaintiffs did not need to successfully execute each method of service in order to comply with the Court's previous Order. The true issue is whether PWC was served through a means reasonably calculated to give it notice as provided in the Court's Order. Whether

publication on only one occasion is enough is irrelevant because the Plaintiffs also served PWC's counsel successfully. Because PWC's counsel acknowledged receipt of the Complaints, and because PWC's counsel have given no indication that they are unable to communicate with their client, the Court is satisfied that the Plaintiffs have adequately proven service. PWC's Motion to Dismiss pursuant to Rule 12(b)(5) [Doc. 163-8] is DENIED.

### B. The Sultan Center Food Products Co., K.S.C.

The United States served Sultan Center Food Products by sending copies of its First Amended Complaint and summons to six different corporate email addresses. Four of those emails were returned as non-deliverable. Of the two emails which did not get returned, one of them is listed on Sultan Center Food Products' website as its main customer support email.[9] The United States also published a notice in the Kuwait Times on May 16, 2016. The Relator Al-Sultan went even further. In addition to the methods taken by the United States, the Relator also served copies of his Complaints and summons on Sultan Center Food Products' American and Kuwaiti counsel via email and international courier, and on Sultan Center Food Products' offices in Kuwait via international courier. On multiple occasions, Sultan Center Food Products' Kuwaiti counsel attempted to avoid service by trying to return or refuse the deliveries.

---

[9]        Customer-support@sultan-center.com.

However, service was eventually perfected at all of those locations.

Once again, as the Court said in its previous Order, each of these methods of service was reasonably calculated to provide notice to PWC. The evidence shows that Sultan Center Food Products was served via email at customer-support@sultan-center.com. Sultan Center Food Products cites <u>Liberty Media Holdings, LLC v. Sheng Gan</u>, No. 11-CV-02754-MSK-KMT, 2012 WL 122862, at *1 (D. Colo. Jan. 17, 2012) for the proposition that service to that email address is insufficient because "[t]here is no reasonable assurance that Plaintiff's emailed complaint and summons will be received on the other end."[10] But the court explained that the reason why the plaintiff's service in that case was insufficient was because there was no indication that the defendant ever held out those emails as a preferred method of contact to the public, nor that the defendant ever actually used those emails.[11] By contrast, the email used in this case is listed on the Sultan Center Food Products' website as its main customer service line; there is no question that Sultan Center Food Products continues to maintain that email address.

In addition, Sultan Center Food Products' counsel, both in the United States and in Kuwait, have been served multiple times through multiple means, and there is no

---

[10]     <u>Liberty Media</u>, 2012 WL 122862, at *4.

[11]     <u>Id.</u>

question that Sultan Center Food Products is independently aware of this litigation. Because Sultan Center Food Products has been effectively served pursuant to the Court's Order in a number of different ways, the sufficiency of a one-time publication in two different newspapers is irrelevant. Sultan Center Food Products' Motions to Dismiss [Docs. 181 & 195] are DENIED.

### C. Tarek Abdul Aziz Sultan Al-Essa

The Relator Al-Sultan served Al-Essa through multiple means. Pursuant to the Court's previous Order, the Relator sent copies of his Complaints and summons to Al-Essa's counsel via email and certified mail. Al-Essa's counsel confirmed receipt of those copies. The Relator also sent copies via international courier to Al-Essa's address in Kuwait. After the initial package was determined to have the wrong address, the Relator attempted to send it to Al-Essa at PWC's offices, but they refused to accept it. The Relator also published notice of the lawsuit in two different Kuwaiti newspapers. Al-Essa does not argue that he is not in communication with his counsel. Because the Court has already determined that these alternative means of service were reasonably calculated to give Al-Essa notice, the fact that his counsel acknowledge receiving the Complaints and summons is enough to prove service and comply with the Court's Order. The Defendants Al-Essa and PWC's Motion to Dismiss based on Rule 12(b)(5) [Doc. 205-2] is DENIED.

### D. Emad Al-Saleh

The Court previously authorized the Relator to serve the Defendant Al-Saleh through his LinkedIn account, his counsel and at his address in Kuwait, and by publication in two Kuwaiti newspapers. By all accounts, service through these means was successful, and the Defendant does not challenge their actual success. Of particular note is the fact that Al-Saleh was served at his Kuwait address. Because service was perfected on him personally at his home, as well as by the methods authorized by the Court, the Defendant Al-Saleh's Motion to Dismiss is DENIED in PART [Doc. 201] as to the issue of service.

### E. Charles Tobias Switzer

Pursuant to the Court's previous Order, the Relator served the Defendant Switzer by sending copies of the Complaints and summons to Switzer's American counsel via email and certified mail, to an address in Kuwait, and by publication. Though service at the Kuwait address was unsuccessful, Switzer's American counsel acknowledged receipt of service. For the same reasons stated above, the Court has determined that service on Switzer's American counsel is sufficient for due process, and Switzer never argues that he is not in communication with his American counsel. For those reasons, the Defendant Switzer's Motion to Dismiss [Doc. 202] is DENIED as to the issue of service.

## IV. Conclusion

The fundamental question when service is being challenged is whether the means chosen would give a defendant reasonable notice and an opportunity to be heard. The Court has already determined that the various alternative means of service sought by the Plaintiffs satisfied that standard, and the Plaintiffs have proven that they have complied with that Order. Therefore, the Defendants' motions to dismiss for insufficient service of process are DENIED. The Clerk is directed to close Docket Nos. 181 and 195, but to leave Docket Nos. 163, 201, 202, and 205 open until such time as the Court addresses the other substantive claims in those motions.

SO ORDERED, this 17 day of February, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge