**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* KAMAL MUSTAFA AL-SULTAN, | ) ) ) | |
| Plaintiff/Relator, | ) ) | |
| v. | ) ) | CIVIL CASE NO. 1:05-CV-02968-TWT |
| THE PUBLIC WAREHOUSING COMPANY, K.S.C., *et al.*, | ) ) ) | |
| Defendants. | ) | |

## THE PUBLIC WAREHOUSING COMPANY, K.S.C.'S ANSWER AND AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT IN INTERVENTION OF THE UNITED STATES OF AMERICA

Defendant The Public Warehousing Company, K.S.C., a/k/a Agility ("PWC"), by and through its undersigned counsel, respectfully submits this Answer and Affirmative Defenses to the United States of America's ("government" or "United States") First Amended Complaint in Intervention (ECF No. 78) (the "Complaint"). PWC denies all of the Complaint's allegations unless expressly admitted herein.

## RESPONSES TO NUMBERED PARAGRAPHS

1.      Paragraph 1 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC admits that the government purports to state an action to recover damages against Defendants. PWC denies that the government is entitled to any relief on any claim asserted in the First Amended Complaint in Intervention.  PWC admits that it is now known as Agility Public Warehousing Company K.S.C.P.  PWC admits that it was the Subsistence Prime Vendor to supply food to the U.S. military operating in Iraq and elsewhere in the Middle East from 2003 to 2010.  PWC otherwise denies the allegations in paragraph 1.

2.      Paragraph 2 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC denies the allegations in paragraph 2.

3.      Paragraph 3 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC denies the allegations in paragraph 3, except that PWC admits that PWC billed the Defense Supply Center Philadelphia ("DSCP") a "Unit Price" for each item ordered, and that under the Prime Vendor Contracts at issue in the Complaint (the "PV Contracts") a "Unit Price" is comprised of two components, the "Delivered

1

Price" and the "Distribution Price."  PWC denies the government's paraphrased definitions for "Delivered Price" and "Distribution Price," and to the extent that paragraph 3 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.

4.     PWC admits that it called upon The Sultan Center ("TSC") to fill orders for some local market ready items ("LMRI").  PWC further admits that TSC sometimes utilized local vendors to fulfill certain requirements of the PV Contracts.  PWC otherwise denies the allegations in paragraph 4.

5.     PWC admits that for certain purchases from TSC and Jordan Global, PWC received prompt payment discounts when it promptly paid for goods.  PWC otherwise denies the allegations in paragraph 5.

6.     Paragraph 6 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in paragraph 6.

7.     Paragraph 7 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in paragraph 7.

2

8.     Paragraph 8 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC denies the allegations in paragraph 8.

9.     Paragraph 9 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC states that 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. §§ 3729 and 3730, referenced in paragraph 9, speak for themselves.

10.     Paragraph 10 sets forth legal conclusions as to which no response is required.  As to paragraph 10(a), PWC admits that it entered into the PV Contracts to supply food to the U.S. military operating in Iraq and elsewhere in the Middle East from 2003 to 2010, that PWC submitted invoices to the DFAS-Columbus, that it maintained an office in Winchester, Virginia from at least approximately October 1, 2004 until approximately September 2008, and that it submitted a proposal on November 16, 2004 containing the language quoted in paragraph 10(a).  As to paragraph 10(b), PWC admits that it identified Ayman Sultan Al-Essa as a member of PWC's Contract Implementation Team and that TSC was identified in PWC's proposals as a participant in the performance of the PV Contracts.  To the extent that paragraph 10 paraphrases, summarizes, or characterizes the proposals referenced in paragraph 10(b) or attempts to draw

3

any factual inferences or legal conclusions from the proposals referenced in paragraph 10(b), PWC denies these allegations.  PWC admits the existence of a document, dated December 2003, that the government refers to as a "Strategic Operating Agreement" (the "alleged SOA").  PWC denies that the alleged SOA was ever operative or in effect.  To the extent that paragraph 10 paraphrases, summarizes, or characterizes the alleged SOA or attempts to draw any factual inferences or legal conclusions from the alleged SOA, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 10, including subparagraphs 10(a) and 10(b).

11.     Paragraph 11 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC states that 28 U.S.C. § 1391(d) and 31 U.S.C. § 3732(a), referenced in paragraph 11, speak for themselves.

12.     Paragraph 12 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC denies the allegations in Paragraph 12, except that PWC admits that Plaintiff United States purports to bring this lawsuit on behalf of the Department of Defense, the Defense Logistics Agency, the Defense Supply Center Philadelphia, and any

other federal agencies which purchased or provided funds for the purchase of products and other services from the Defendants.

13.    Admitted.

14.    PWC lacks knowledge or information sufficient to form a belief as to the truth of paragraph 14 and, on that basis, denies the allegations in paragraph 14.

15.    PWC admits that in July 2010, DSCP was renamed DLA Troop Support.  PWC lacks knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 15 and, on that basis, denies the remaining allegations in paragraph 15.

16.    Paragraph 16 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC admits that the Relator purports to state an action on behalf of himself and the United States to recover damages against Defendants.  PWC admits that the Court's docket reflects that the Relator filed complaints and the government intervened on the dates indicated in paragraph 16.  PWC denies that the Relator and/or the United States are entitled to any relief on any claim asserted by the Relator.  PWC lacks knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 16 and, on that basis, denies the same.

5

17.    Paragraph 17 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in paragraph 17.

18.    PWC admits the first sentence of paragraph 18, except that PWC states that it is now known as Agility Public Warehousing K.S.C.P.  PWC states that Note 1 of PWC's Consolidated Financial Statements as of December 31, 2010 speaks for itself.  To the extent that paragraph 18 paraphrases, summarizes, or characterizes PWC's Consolidated Financial Statements or attempts to draw any factual inferences or legal conclusions from PWC's Consolidated Financial Statements, PWC denies these allegations.  PWC admits that, at the time of the filing of the Complaint, it maintained a website accessible at www.agilitylogistics.com and states that the text of the website spoke for itself. To the extent that paragraph 18 paraphrases, summarizes, or characterizes www.agilitylogistics.com or attempts to draw any factual inferences or legal conclusions from www.agilitylogistics.com, PWC denies these allegations. PWC admits that Tarek Abdul Aziz Sultan Al-Essa ("Tarek Sultan") was, at the time of the filing of the Complaint, the Chairman and Managing Director of PWC.  PWC otherwise denies the allegations in paragraph 18.

19.    Admitted.

20.    The first sentence of paragraph 20 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 20 due to, among other reasons, the vagueness and ambiguity of those allegations.  As to the second sentence of paragraph 20, PWC denies that TSC has a substantial ownership and voting interest in PWC.  PWC lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the second sentence of paragraph 20 and, on that basis, denies the same.  As to the third and fourth sentences of paragraph 20, PWC admits that the National Real Estate Company ("NREC") is a PWC shareholder.  PWC further admits that it has thousands of shareholders with voting interest in PWC.  PWC denies that NREC was one of only eight PWC shareholders with voting interest in PWC.  The fifth sentence of paragraph 20 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC denies the allegations in the fifth sentence of paragraph 20.  As to the sixth and seventh sentences of paragraph 20, PWC admits that an individual named Jamil Sultan Al Essa served on PWC's board of directors and was related to Tarek Sultan.  PWC lacks knowledge or information sufficient to form a belief as to the truth of the

7

remainder of the sixth and seventh sentences of paragraph 20 and, on that basis, denies the same.  As to the eighth sentence of paragraph 20, PWC admits that TSC worked with PWC as a supplier under the PV Contracts.  To the extent that paragraph 20 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.   The remaining allegations of Paragraph 20, if any, are denied.

21.    Paragraph 21 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC states that 31 U.S.C. § 3729, referenced in paragraph 21, speaks for itself.  PWC otherwise denies the allegations in paragraph 21.

22.    Paragraph 22 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC states that 31 U.S.C. § 3729, referenced in paragraph 22, speaks for itself.  PWC otherwise denies the allegations in paragraph 22.

23.    Paragraph 23 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC states that 31 U.S.C. § 3729, referenced in paragraph 23, speaks for itself.  PWC otherwise denies the allegations in paragraph 23.

8

24.     Paragraph 24 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC states that 31 U.S.C. § 3729, referenced in paragraph 24, speaks for itself.  PWC otherwise denies the allegations in paragraph 24.

25.     PWC admits that DSCP issued solicitations for at least some prime vendor contracts for the acquisition and supply of subsistence items for the U.S. military in various parts of the Middle East, but PWC lacks knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 25 and, on that basis, denies the remaining allegations in paragraph 25.

26.     To the extent that paragraph 26 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC denies the last sentence of paragraph 26.  PWC otherwise admits the allegations in paragraph 26.

27.     To the extent that paragraph 27 paraphrases, summarizes, or characterizes the PV Contracts or their solicitations or attempts to draw any factual inferences or legal conclusions from the PV Contracts or their

solicitations, PWC denies these allegations. PWC otherwise admits the allegations in paragraph 27.

28.    To the extent that paragraph 28 paraphrases, summarizes, or characterizes the PV Contracts, their solicitations, or any related proposals or attempts to draw any factual inferences or legal conclusions from the PV Contracts, their solicitations, or any related proposals, PWC denies these allegations. PWC otherwise admits the allegations in paragraph 28.

29.    To the extent that paragraph 29 paraphrases, summarizes, or characterizes the PV Contracts or their modifications or attempts to draw any factual inferences or legal conclusions from the PV Contracts or their modifications, PWC denies these allegations. PWC otherwise admits the allegations in paragraph 29.

30.    Admitted.

31.    To the extent that paragraph 31 paraphrases, summarizes, or characterizes the PV Contracts or their solicitations or attempts to draw any factual inferences or legal conclusions from the PV Contracts or their solicitations, PWC denies these allegations. PWC otherwise admits the allegations in paragraph 31.

10

32.    PWC admits the first sentence of paragraph 32.  As to the second sentence of paragraph 32, PWC admits that it submitted multiple documents and engaged in negotiations with DSCP as part of the solicitation process for the PV Contracts.  PWC otherwise denies the allegations in paragraph 32.

33.    Admitted.

34.    PWC admits that the PV-II Contract to supply subsistence items to the U.S. military and other authorized customers in the Middle East was awarded with an effective date of June 3, 2005 and that the PV Bridge Contract modification to the PV-I Contract was effective through December 15, 2005. PWC otherwise denies the allegations in paragraph 34.

35.    Admitted.

36.    Admitted.

37.    Paragraph 37 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC admits that under each of the three PV Contracts, PWC was to invoice DSCP a "Unit Price" for each product delivered.  PWC admits that the PV Contracts contain the language quoted in paragraph 37.   To the extent that paragraph 37 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual

inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 37.

38.     Paragraph 38 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC admits that the PV Contracts contain the language quoted in paragraph 38.  To the extent that paragraph 38 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 38.

39.     Paragraph 39 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC admits that the PV Contracts contain the language quoted in paragraph 39.  To the extent that paragraph 39 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 39.

40.     Paragraph 40 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC admits that the PV Contracts contain the language quoted in paragraph 40.  To the extent that

paragraph 40 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 40.

41.    To the extent that paragraph 41 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 41.

42.    Paragraph 42 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, and to the extent that paragraph 42 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 42.

43.    The first sentence of paragraph 43 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC denies the first sentence of paragraph 43.  As to the second sentence of paragraph 43, PWC admits that the PV-I Contract contains the language quoted in paragraph 43.  PWC also admits that STORES is an acronym for the

13

Subsistence Total Order and Receipt Electronic System and that STORES is a government computer system used by DoD customers to place orders under the PV Contracts.  To the extent that paragraph 43 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 43.

44.    The first sentence of paragraph 44 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC admits that the PV-II Contract contains the language quoted in paragraph 44.  To the extent that paragraph 44 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 44.

45.    Paragraph 45 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, and to the extent that paragraph 45 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 45.

14

46.    To the extent that paragraph 45 paraphrases, summarizes or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC admits that it correctly claimed that it was allowed to retain "prompt payment" discounts it earned from suppliers under the PV Contracts.   PWC otherwise denies the allegations in paragraph 46.

47.    PWC admits that it sent the letter dated March 16, 2007 referenced in paragraph 47.  To the extent that paragraph 47 paraphrases, summarizes, or characterizes the March 16, 2007 letter or attempts to draw any factual inferences or legal conclusions from the March 16, 2007 letter, PWC denies these allegations.  PWC admits that the Contracting Officer issued a decision dated July 18, 2007 and that PWC appealed that decision to the Armed Services Board of Contract Appeals ("ASBCA").   To the extent that paragraph 47 paraphrases, summarizes, or characterizes the July 18, 2007 decision or attempts to draw any factual inferences or legal conclusions from the July 18, 2007 decision, PWC denies these allegations.   To the extent that paragraph 47 paraphrases, summarizes, or characterizes PWC's appeal to the ASBCA or attempts to draw any factual inferences or legal conclusions from PWC's appeal to the ASBCA, PWC denies these allegations.  PWC admits that the Contracting

15

Officer subsequently issued a supplemental decision. To the extent that paragraph 47 paraphrases, summarizes, or characterizes the supplemental decision or attempts to draw any factual inferences or legal conclusions from the supplemental decision, PWC denies these allegations. PWC admits that the ASBCA issued an opinion on September 25, 2007. To the extent that paragraph 47 paraphrases, summarizes, or characterizes the September 25, 2007 decision or attempts to draw any factual inferences or legal conclusions from the September 25, 2007 decision, PWC denies these allegations. PWC otherwise denies the allegations in paragraph 47.

48.     The first sentence of paragraph 48 sets forth legal conclusions as to which no response is required. To the extent that paragraph 48 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations. PWC otherwise admits the allegations in paragraph 48.

49.     As to the first sentence of paragraph 49, PWC admits that it sent letters indicating that TSC would serve as a supplier of LMRI in connection with PWC's performance under the PV-I Contract. To the extent that paragraph 49 paraphrases, summarizes, characterizes or translates any correspondence referenced in paragraph 49 or attempts to draw any factual inferences or legal

conclusions from any correspondence referenced in paragraph 49, PWC denies these allegations. As to the second sentence of paragraph 49, PWC admits that it regularly coordinated with its supplier TSC regarding DSCP's orders for LMRI. PWC otherwise denies the allegations in paragraph 49.

50. To the extent that paragraph 50 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations. PWC admits that TSC sometimes utilized local vendors to supply LMRI in connection with the PV Contracts. PWC otherwise lacks knowledge or information sufficient to form a belief as to the truth of the first and second sentences of paragraph 50 and, on that basis, denies the same. As to the third sentence of paragraph 50, PWC admits that its trucks sometimes picked up LMRI from the facilities of local vendors. PWC otherwise lacks knowledge or information sufficient to form a belief as to the truth of the third and fourth sentences of paragraph 50 and, on that basis, denies the same.

51. The first sentence of paragraph 51 sets forth legal conclusions as to which no response is required. To the extent that paragraph 51 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual

inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 51.

52.    Paragraph 52 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC denies the allegations in paragraph 52.  To the extent that paragraph 52 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 52.

53.    To the extent that paragraph 53 paraphrases, summarizes, or characterizes the PV Contracts or any related proposal or attempts to draw any factual inferences or legal conclusions from the PV Contracts or any related proposal, PWC denies these allegations.  PWC admits that the language quoted in paragraph 53 appeared in a PWC proposal.  PWC otherwise denies the allegations in paragraph 53.

54.    PWC admits that the language quoted in paragraph 54 appears in an email from Mr. Lubrano.  To the extent that paragraph 54 paraphrases, summarizes, or characterizes the email referenced in paragraph 54 or attempts to draw any factual inferences or legal conclusions from the email referenced in

paragraph 54, PWC denies these allegations.   PWC otherwise denies the allegations in paragraph 54.

55.   PWC admits that the language quoted in paragraph 55 appears in an email from Rani Wehbe.   To the extent that paragraph 55 paraphrases, summarizes, or characterizes the email referenced in paragraph 55 or attempts to draw any factual inferences or legal conclusions from the email referenced in paragraph 55, PWC denies these allegations.   PWC otherwise denies the allegations in paragraph 55.

56.   Paragraph 56 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, and to the extent that paragraph 56 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.   PWC otherwise denies the allegations in paragraph 56.

57.   To the extent that paragraph 57 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.   PWC otherwise lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 57 and, on that basis, denies the allegations in paragraph 57.

58.   To the extent that paragraph 58 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations. PWC otherwise denies the allegations in paragraph 58.

59.   PWC admits that it performed market surveys of TSC's retail prices. PWC otherwise denies the allegations in paragraph 59.

60.   Paragraph 60 sets forth legal conclusions as to which no response is required. To the extent a response is deemed necessary, and to the extent that paragraph 60 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations. PWC otherwise denies the allegations in paragraph 60.

61.   Denied.

62.   PWC admits that the government has attached to the Complaint a spreadsheet labeled Exhibit 1 and purporting to show the categories of LMRI that PWC purchased from TSC between 2003 and 2008. PWC otherwise denies the allegations in paragraph 62.

20

63.     Denied.

64.     PWC admits that for certain purchases from TSC, PWC received a 10% prompt payment discount when it promptly paid for goods.   PWC otherwise denies the allegations in paragraph 64.

65.     Paragraph 65 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC admits that for certain purchases from TSC, PWC received a 10% prompt payment discount when it promptly paid for goods. To the extent that paragraph 65 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 65.

66.     PWC admits that it produced to the United States a spreadsheet with Bates Numbers PWC-0500268 to PWC-0500351.   To the extent that paragraph 66 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 66.

67.     PWC admits that for certain purchases from TSC, PWC received a 10% prompt payment discount when it promptly paid for goods.  PWC admits

21

the existence of a document, dated December 14, 2003, which the government alleges to be a "Services Agreement" (the "alleged SA").  To the extent that paragraph 67 paraphrases, summarizes, or characterizes the alleged SA or the PV Contracts or attempts to draw any factual inferences or legal conclusions from the alleged SA or the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 67.

68.     Paragraph 68 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC admits the existence of a document, the alleged SA, dated December 14, 2003.  To the extent that paragraph 68 paraphrases, summarizes, or characterizes the alleged SA or the PV Contracts or attempts to draw any factual inferences or legal conclusions from the alleged SA or the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 68.

69.     Paragraph 69 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC admits the existence of a document, the alleged SA, dated December 14, 2003.  To the extent that paragraph 69 paraphrases, summarizes, or characterizes the alleged SA or the PV Contracts or attempts to draw any factual inferences or legal

conclusions from the alleged SA or the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 69.

70.    Paragraph 70 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70 regarding any of TSC's reasoning to take any action and, on that basis, denies the same.  PWC admits the existence of a document, the alleged SA, dated December 14, 2003.  To the extent that paragraph 70 paraphrases, summarizes, or characterizes the alleged SA or the PV Contracts or attempts to draw any factual inferences or legal conclusions from the alleged SA or the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 70.

71.    PWC admits the existence of a letter from Aymen Sultan referenced in paragraph 71.  To the extent that paragraph 71 paraphrases, summarizes, or characterizes the letter referenced in paragraph 71 or attempts to draw any factual inferences or legal conclusions from the letter referenced in paragraph 71, PWC denies these allegations.   PWC otherwise denies the allegations in paragraph 71.

72.     PWC admits that for certain purchases from TSC, PWC received a 10% prompt payment discount when it promptly paid for goods and that PWC personnel sent or received emails containing the language quoted in paragraph 72.  To the extent that paragraph 72 paraphrases, summarizes, or characterizes the emails referenced in paragraph 72 or attempts to draw any factual inferences or legal conclusions from the emails referenced in paragraph 72, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 72.

73.     PWC admits that for certain purchases from TSC, PWC received a 10% prompt payment discount from TSC when it promptly paid for goods, and that it made this representation to the United States during a government investigation.  PWC further admits that it was entitled to keep such prompt payment discounts under the terms of the PV Contracts.  PWC otherwise denies the allegations in paragraph 73.

74.     Paragraph 74 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC admits that for certain purchases from TSC, PWC received a 10% prompt payment discount when it promptly paid for goods. To the extent that paragraph 74 paraphrases, summarizes, or characterizes the alleged SOA or attempts to draw any factual

inferences or legal conclusions from the alleged SOA, PWC denies these allegations. PWC otherwise denies the allegations in paragraph 74.

75. Denied.

76. Paragraph 76 sets forth legal conclusions as to which no response is required. To the extent a response is deemed necessary, PWC admits that it worked with Jordan Global in connection with the PV Contracts and that for certain purchases from Jordan Global, PWC received a prompt payment discount when it promptly paid for goods. To the extent that paragraph 76 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations. PWC otherwise denies the allegations in paragraph 76.

77. Denied.

78. PWC admits the existence of PWC Sales Invoice 015665 for DSCP Purchase Order W91C0243625632 and states that the invoice speaks for itself. To the extent that paragraph 78 paraphrases, summarizes, or characterizes PWC Sales Invoice 015665 or attempts to draw any factual inferences or legal conclusions from PWC Sales Invoice 015665, PWC denies these allegations. PWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding an alleged IMISK invoice dated January 3, 2005

25

and, on that basis, denies the same.  PWC otherwise denies the allegations in paragraph 78.

79.   Denied.

80.   Denied.

81.   PWC admits that for certain purchases from certain CONUS suppliers, PWC received a prompt payment discount when it promptly paid for goods.  PWC otherwise denies the allegations in paragraph 81.

82.   Denied.

83.   PWC admits that Sara Lee initially offered a two percent prompt payment discount for payments made within 20 days and that Sara Lee later agreed to provide a five percent prompt payment discount for payments made within 30 days.  PWC otherwise denies the allegations in paragraph 83.

84.   PWC admits that PWC personnel sent communications to Sara Lee requesting that any prompt payment discount provided by Sara Lee be referred to as a prompt payment discount.  PWC admits that a Sara Lee representative sent an email with the language quoted in paragraph 84.  To the extent that paragraph 84 paraphrases, summarizes, or characterizes the email referenced in paragraph 84 or attempts to draw any factual inferences or legal conclusions

from the email referenced in paragraph 84, PWC denies these allegations.  PWC

otherwise denies the allegations in paragraph 84.

85.    Denied.

86.    PWC admits that it received a five percent prompt payment

discount from Texas Best Trading LLC ("Texas Best"), a CONUS supplier that

provided chicken products, when PWC promptly paid for goods from Texas

Best.  PWC further admits that it was entitled to keep such prompt payment

discounts under the terms of the PV Contracts.  PWC otherwise denies the

allegations in paragraph 86.

87.    PWC admits that, in February 2005, Texas Best agreed to provide a

seven percent prompt payment discount for payments that PWC made within 60

days.  PWC further admits that Texas Best agreed to provide an 8.5 percent

prompt payment discount for payments that PWC made within 30 days and a 7.5

percent prompt payment discount for payments that PWC made within 45 days.

PWC otherwise denies the allegations in paragraph 87.

88.    As to the first and second sentences of paragraph 88, PWC lacks

knowledge or information sufficient to form a belief as to Texas Best's intent

when it offered any prompt payment discounts to PWC for paying promptly,

and, on that basis, denies the same.  As to the second sentence of paragraph 88,

PWC admits that Texas Best agreed to provide a seven percent prompt payment discount for payments that PWC made within 60 days.  The third sentence of paragraph 88 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC denies the third sentence of paragraph 88.  PWC otherwise denies the allegations in paragraph 88.

89.   Denied.

90.   PWC admits that a January 15, 2005 internal PWC email contains the text quoted in paragraph 90.  To the extent that paragraph 90 paraphrases, summarizes, or characterizes the email referenced in paragraph 90 or attempts to draw any factual inferences or legal conclusions from the email referenced in paragraph 90, PWC denies these allegations.   PWC otherwise denies the allegations in paragraph 90.

91.   Denied.

92.   PWC admits that, starting in the spring of 2006, Rome, Georgia-based Zartic, Inc. ("Zartic") sometimes provided prompt payment discounts when PWC paid promptly for goods.  PWC otherwise denies the allegations in paragraph 92.

93.   PWC lacks knowledge or information sufficient to form a belief as to Zartic's intent when it offered any prompt payment discounts to PWC for

28

paying promptly, and, on that basis, denies the same.  PWC admits that Zartic sometimes provided a four percent prompt payment discount when PWC paid within 21 days.  PWC further admits that, from May 29, 2006 through July 15, 2006, Zartic provided a seven percent prompt payment discount when PWC paid within 21 days.  PWC otherwise denies the allegations in paragraph 93.

94.    Denied.

95.    PWC admits that, on May 29, 2006, a PWC employee sent an email with the language quoted in paragraph 95.  To the extent that paragraph 95 paraphrases, summarizes, or characterizes the email referenced in paragraph 95 or attempts to draw any factual inferences or legal conclusions from the email referenced in paragraph 95, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 95.

96.    Denied.

97.    PWC incorporates by reference its answers to paragraphs 1 through 96 with the same legal force and effect as if fully set forth herein.

98.    Paragraph 98 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98 that TSC "knowingly caused" any action and that TSC "acted with

reckless disregard or deliberate ignorance of the truth or falsity of the claims" and, on that basis, denies the same.  PWC otherwise denies the allegations in paragraph 98.

99.   Paragraph 99 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in paragraph 99.

100.   PWC incorporates by reference its answers to paragraphs 1 through 96 with the same legal force and effect as if fully set forth herein.

101.   Paragraph 101 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101 that TSC "knowingly caused" any action and that TSC "acted with actual knowledge, reckless disregard or deliberate ignorance of the truth or falsity of the claims" and, on that basis, denies the same.  PWC otherwise denies the allegations in paragraph 101.

102.   Paragraph 102 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in paragraph 102.

103.   PWC incorporates by reference its answers to paragraphs 1 through 96 with the same legal force and effect as if fully set forth herein.

104.   Paragraph 104 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104 that TSC "knowingly caused" any action and that TSC "acted with actual knowledge, reckless disregard or deliberate ignorance of the truth or falsity of the claims" and, on that basis, denies the same.   PWC otherwise denies the allegations in paragraph 104.

105.   Paragraph 105 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in paragraph 105.

106.   PWC incorporates by reference its answers to paragraphs 1 through 96 with the same legal force and effect as if fully set forth herein.

107.   Paragraph 107 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107 that TSC "knowingly caused" any action and that TSC "acted with actual knowledge, reckless disregard or deliberate ignorance of

31

the truth or falsity of the claims" and, on that basis, denies the same. PWC otherwise denies the allegations in paragraph 107.

108.   Paragraph 108 sets forth legal conclusions as to which no response is required. To the extent a response is deemed necessary, PWC denies the allegations in paragraph 108.

109.   PWC incorporates by reference its answers to paragraphs 1 through 96 with the same legal force and effect as if fully set forth herein.

110.   Paragraph 110 sets forth legal conclusions as to which no response is required. To the extent a response is deemed necessary, PWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110 that TSC "caused" any action and that TSC "acted with actual knowledge, reckless disregard or deliberate ignorance of the truth or falsity of the claims" and, on that basis, denies the same. PWC otherwise denies the allegations in paragraph 110.

111.   Paragraph 111 sets forth legal conclusions as to which no response is required. To the extent a response is deemed necessary, PWC denies the allegations in paragraph 111.

112.   PWC incorporates by reference its answers to paragraphs 1 through 96 with the same legal force and effect as if fully set forth herein.

32

113.   Paragraph 113 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113 that TSC "caused" any action and that TSC "acted with actual knowledge, reckless disregard or deliberate ignorance of the truth or falsity of the claims" and, on that basis, denies the same.   PWC otherwise denies the allegations in paragraph 113.

114.   Paragraph 114 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in paragraph 114.

115.   PWC incorporates by reference its answers to paragraphs 1 through 96 with the same legal force and effect as if fully set forth herein.

116.   Paragraph 116 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in paragraph 116.

117.   Paragraph 117 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in paragraph 117.

118.   Paragraph 118 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in paragraph 118.

119.   Paragraph 119 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in paragraph 119.

120.   Paragraph 120 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in paragraph 120.

121.   Paragraph 121 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 121 that the United States "justifiably relied" on any facts and, on that basis, denies the same.  PWC otherwise denies the allegations in paragraph 121.

122.   Paragraph 122 sets forth legal conclusions as to which no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in paragraph 122.

123.   PWC incorporates by reference its answers to paragraphs 1 through 96 with the same legal force and effect as if fully set forth herein.

124.   PWC denies paragraph 124 as moot, pursuant to the Court's March 16, 2017 Order (ECF No. 283).

125.   PWC denies paragraph 125 as moot, pursuant to the Court's March 16, 2017 Order (ECF No. 283).

126.   PWC denies paragraph 126 as moot, pursuant to the Court's March 16, 2017 Order (ECF No. 283).

127.   PWC denies paragraph 127 as moot, pursuant to the Court's March 16, 2017 Order (ECF No. 283).

128.   PWC incorporates by reference its answers to paragraphs 1 through 96 with the same legal force and effect as if fully set forth herein.

129.   PWC denies paragraph 129 as moot, pursuant to the Court's March 16, 2017 Order (ECF No. 283).

130.   PWC denies paragraph 130 as moot, pursuant to the Court's March 16, 2017 Order (ECF No. 283).

131.   PWC denies paragraph 131 as moot, pursuant to the Court's March 16, 2017 Order (ECF No. 283).

132.   PWC incorporates by reference its answers to paragraphs 1 through 96 with the same legal force and effect as if fully set forth herein.

133.   Paragraph 133 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC admits that it entered into the PV Contracts and that the PV Contracts imposed certain obligations on PWC.  To the extent that paragraph 133 paraphrases, summarizes, or characterizes the PV Contracts or attempts to draw any factual inferences or legal conclusions from the PV Contracts, PWC denies these allegations.  PWC otherwise denies the allegations in paragraph 133.

134.   Paragraph 134 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC denies the allegations in paragraph 134.

135.   Paragraph 135 sets forth legal conclusions as to which no response is required.  To the extent a response is deemed necessary, PWC denies the allegations in paragraph 135.

In response to the section following paragraph 135 of the government's First Amended Complaint in Intervention entitled "Prayer for Relief," and each of its subparts, PWC denies that the government is entitled to any relief whatsoever in connection with the allegations set forth therein.  To the extent the

government's "Prayer for Relief" states legal conclusions, no response is required.   To the extent a response is deemed necessary, PWC denies the allegations in the section entitled "Prayer for Relief."

Any allegation in the government's First Amended Complaint in Intervention not specifically admitted, including but not limited to any subpart or heading, is hereby denied.

## **AFFIRMATIVE DEFENSES**

PWC alleges the following separate and distinct Affirmative Defenses to the allegations set forth in the First Amended Complaint in Intervention.   By alleging the matters set forth below as Affirmative Defenses, PWC does not thereby allege or admit that PWC has the burden of proof or the burden of persuasion with respect to any of these matters.   PWC presently lacks sufficient knowledge or information on which to form a belief as to whether it may have additional available affirmative defenses.   PWC hereby gives notice that it intends to rely upon such other and further defenses as may become available or apparent during pretrial proceedings in this action and hereby reserves its rights to amend its answer and assert all such defenses.

37

## FIRST AFFIRMATIVE DEFENSE

### (Ratification)

The Government's claims are barred, in whole or in part, by the doctrine of ratification.  PWC consistently and clearly disclosed its interpretation of the relevant provisions of the PV Contracts to DSCP.  DSCP never objected to PWC's disclosures and interpretations, and, instead, explicitly incorporated PWC's definitions into the Second PV Contract.  DSCP also continued paying PWC's invoices, awarded PWC with the PV Bridge and the Second PV Contracts, and exercised all three options to extend the Second PV Contract with full awareness of PWC's definitions and interpretations of key PV Contract provisions.  DSCP ratified, or otherwise consented to, PWC's pricing practices throughout its performance of the PV Contracts.

## SECOND AFFIRMATIVE DEFENSE

### (Acquiescence)

The government's claims are barred, in whole or in part, by the doctrine of acquiescence.  PWC consistently and clearly disclosed its interpretation of the relevant provisions of the PV Contracts to DSCP.  DSCP never objected to PWC's disclosures and interpretations, and, instead, explicitly incorporated PWC's definitions into the Second PV Contract.  DSCP also continued paying

38

PWC's invoices, awarded PWC with the PV Bridge and Second PV Contracts, and exercised all three options to extend the Second PV Contract with full awareness of PWC's definitions and interpretations of key PV Contract provisions. To the extent that PWC's pricing practices were inconsistent with any contractual requirements, which they were not, DSCP acquiesced to those practices throughout its performance of the PV Contracts.

## THIRD AFFIRMATIVE DEFENSE

### (Knowledge)

DSCP, DLA and/or the DoD had knowledge of PWC's pricing practices due to PWC's consistent and clear disclosures of its interpretations of the relevant provisions of the PV Contracts to DSCP.

## FOURTH AFFIRMATIVE DEFENSE

### (Estoppel)

The government's claims are barred, in whole or in part, by the doctrine of estoppel. PWC consistently and clearly disclosed its interpretation of the relevant contract provisions to DSCP, which explicitly incorporated PWC's definitions into the Second PV Contract, and DSCP continued paying PWC's invoices, awarded PWC the Second PV Contract, and exercised all three options

to extend the Second PV Contract with full awareness of PWC's definitions and interpretations of key PV Contract provisions.

## FIFTH AFFIRMATIVE DEFENSE

### (Materiality)

Any false claim submitted or false statement made by PWC to DSCP was not material according to the standard set forth in *Universal Health Servs., Inc. v. Escobar*, 136 S. Ct. 1989 (2016).

## SIXTH AFFIRMATIVE DEFENSE

### (Equitable Relief)

To the extent that the government attempts to seek equitable relief against PWC, it is not entitled to such relief because it has an adequate remedy at law.

## SEVENTH AFFIRMATIVE DEFENSE

### (Insufficient Service of Process)

The government's claims should be dismissed for insufficiency of service of process.

## EIGHTH AFFIRMATIVE DEFENSE

### (Laches)

The government's claims are barred, in whole or in part, by the doctrine of laches because PWC consistently and clearly disclosed its interpretation of

the relevant contract provisions to DSCP, which explicitly incorporated PWC's definitions into the Second PV Contract. The government did not assert its rights, but instead continued paying PWC's invoices, awarded PWC the Second PV Contract, and exercised all three options to extend the Second PV Contract will full awareness of PWC's definitions and interpretations of key PV Contract provisions.

## NINTH AFFIRMATIVE DEFENSE

### (Waiver)

The government's claims are barred, in whole or in part, by the doctrine of waiver. PWC consistently and clearly disclosed its interpretation of the relevant provisions of the PV Contracts to DSCP. DSCP never objected to PWC's disclosures and interpretations, and, instead, explicitly incorporated PWC's definitions into the Second PV Contract. DSCP also continued paying PWC's invoices, awarded PWC with the PV Bridge and Second PV Contracts, and exercised all three options to extend the Second PV Contract with full awareness of PWC's definitions and interpretations of key PV Contract provisions. To the extent that any contractual requirements were inconsistent with PWC's pricing practices, which they were not, DSCP waived those requirements throughout its performance of the PV Contracts.

41

## TENTH AFFIRMATIVE DEFENSE

### (Good Faith)

The government's claims are barred, in whole or in part, because any and all actions taken by PWC with respect to any of the matters alleged in government's Complaint were taken in good faith and in accordance with established industry practice.

## ELEVENTH AFFIRMATIVE DEFENSE

### (No Injury)

The government has not suffered any actual injury as a result of PWC's pricing practices.

## TWELFTH AFFIRMATIVE DEFENSE

### (Recoupment and Setoff)

The government's claims are barred, in whole or in part, by the doctrines of recoupment and setoff.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

The government has failed to mitigate its damages, if any, by continuing to pay PWC's invoices despite its agents' or authorized representatives'

knowledge that those invoices were allegedly "false or fraudulent" or allegedly violated the terms of the PV Contracts.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Right to Offset)

PWC is entitled to an offset for all amounts the United States has received for the alleged loss which gave rise to this lawsuit.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Recovery Inconsistent with Applicable Law and Regulations)

The government's claims are barred, in whole or in part, to the extent that they seek to impose on PWC obligations that are inconsistent with, or in excess of, those imposed by existing law and regulation in effect during the time period of the conduct alleged in the government's Complaint.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Reliance on Expert)

The government's claims are barred, in whole or in part, because PWC disclosed all relevant information, including the PV Contracts and solicitations, to its expert consultant, Professional Contract Administrators ("PCA"), and relied in good faith on PCA's advice regarding the interpretation of key PV Contract terms.

## SEVENTEENTH AFFIRMATIVE DEFENSE

(Violation of the Excessive Fines Clause and the Due Process Clause)

To the extent damages and/or penalties in excess of any actual damages suffered by the government are sought against PWC, such an award would violate the Excessive Fines Clause of the Eighth Amendment and the Due Process Clause of the Fifth Amendment to the United States Constitution.

## SEVENTEENTH AFFIRMATIVE DEFENSE

(Reservation of Rights)

PWC reserves the right to raise any additional affirmative defenses that may be established during discovery or other investigation and by the evidence in this case.

## JURY TRIAL DEMAND

PWC demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, PWC, having fully answered the First Amended Complaint in Intervention, respectfully requests that the Court:

1. Enter judgment in favor of PWC, deny the government's requested relief in its entirety, and order that the government shall recover nothing;

44

2.      Award PWC the costs and expenses incurred to defend this action,

including reasonable attorneys' fees; and

3.      Award PWC such other relief as the Court deems just and proper.

Dated:  March 30, 2017          Respectfully submitted,

                                s/ Richard Marmaro
                                Richard Marmaro (admitted *Pro Hac Vice*)
                                Cal. Bar No. 091387
                                Matthew E. Sloan (admitted *Pro Hac Vice*)
                                Cal. Bar No. 165165
                                Emily Ludmir Aviad (admitted *Pro Hac Vice*)
                                Cal. Bar No. 251995
                                SKADDEN ARPS SLATE MEAGHER & FLOM LLP
                                300 S. Grand Avenue, Suite 3400
                                Los Angeles, California  90071-3144
                                Telephone:  (213) 687-5000
                                Facsimile:   (213) 687-5600

Dated:  March 30, 2017          Respectfully submitted,
                                s/ Kristin N. Tahler
                                Kristin N. Tahler (admitted *Pro Hac Vice*)
                                Cal. Bar No. 261908
                                QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                865 S. Figueroa St., 10th Floor
                                Los Angeles, California  90017
                                Telephone:  (213) 443-3000
                                Facsimile:   (213) 443-3100

Dated:  March 30, 2017          Respectfully submitted,

                                s/ Richard H. Deane, Jr.
                                Richard H. Deane, Jr.
                                Ga. Bar No. 214875
                                Lucas W. Andrews
45

Ga. Bar No. 019533
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309-3053
Telephone:   (404) 521-3939
Facsimile:    (404) 581-8330

Attorneys for Defendant
The Public Warehousing Company, K.S.C.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this day I have caused a copy of the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filings to all counsel of record.

This 30th day of March, 2017.

s/ Richard Marmaro
Richard Marmaro